(Decided Oct. 3rd, 1861.)

---

# MARY KENT, and others, *vs.* WILLIAM M. and DAVID CARCAUD.

By a written contract of purchase, the purchasers agreed to purchase from trustees, under a decree in equity, "the one-half of the farm in Calvert county, known as 'Over the Creek Farm,' for the sum of $6300." HELD:

1st. That looking to the terms of this agreement, there is no ground for any deduction for deficiency in quantity; the purchasers agreed to pay a sum certain, *in gross*, for one-half of a farm by name, without mention of quantity, or reference to a plat, or any stipulation on the part of the vendors.

2nd. But if the purchasers bought under the belief that the farm contained 716 acres, produced by the representation of the trustees, and the exhibition of a plat to that effect, and it is found to contain, in fact, but 538 acres, they are entitled to a proportionate abatement from the purchase money.

3rd. The exhibition of a plat is equivalent to an averment of the number of acres, and it may be shown that a written contract was entered into in consequence of a misrepresentation by the other party, though innocently made.

4th. The trustees, in their *answer* to the petition of the purchasers for abatement, cannot, after admitting the making of this written contract, aver that the purchasers agreed to take one-half the farm for 350 acres, *more or less*, for this would introduce a qualification into the written agreement materially changing the obligations of the parties.

5th. The trustees cannot, in answering the petition, set up a treaty or terms agreed upon before the written contract was made, inconsistent with the legal import of that instrument, which must be considered as having merged all previous negotiations resting in parol.

6th. If there was proof that the words *"more or less"* were agreed upon in the treaty, and had been omitted from the written contract, the defence would stand upon a different principle.

7th. But that part of the answer which is *responsive* to the allegations of the petition, and which states that they sold half the farm, assuming it to be 350 acres, and that the purchasers agreed to take it for that quantity, not being disproved, binds the petitioners.

8th. The general rule, in such cases as this, is, that the vendee shall have what the vendor can give, with an abatement out of the unpaid purchase money, for so much as the quantity falls short of the representation, and not to rescind the sale entirely.

APPEAL from the Equity Side of the Circuit Court for Anne Arundel county.

It appears, from the record in this case, that Dorsey and Pratt, trustees appointed for the sale of the real estate of James Kent, deceased, upon a bill filed by the appellants, advertised the same for sale, and among other parcels of land described in this advertisement, was "the farm known as 'Over the Creek,' adjoining Lower Marlborough, *supposed to contain about five hundred acres."* In their report of sale, filed on the 11th of August 1855, the trustees state that they had sold all the interest of said James Kent in this farm, to Thomas J. Gantt, "for the sum of twelve dollars per acre; that they *have been informed that the said farm contains seven hundred and sixteen acres of land,* of which Mr. Kent was entitled to an undivided moiety; that they have, since the sale, made every effort, but have found no surveyor who will make the survey for them." Gantt was subsequently released from his

purchase, and on the 4th of September 1855, the trustees sold the land, at private sale, to the appellees, who, on that day, signed a written agreement of purchase, stating that they had bought from the trustees "the one-half of the farm in Calvert county, held jointly by the late James Kent with his wife, Mary Kent, known as 'Over the Creek Farm,' *for the sum of* $6300, with the understanding that the undersigned are to have the one-half of said land lying next to the Patuxent river." This sale was reported to the court on the 7th of September 1855, by the trustees, who state, in their said report, that they had sold the land to the appellees "*for the sum of* $6300; that they had frequently advertised the same without being able to effect a sale thereof, and that the sale now made is for a larger price than they have ever before been offered for the said lands." Orders were then passed by the court setting aside the previous sale to Gantt, and affirming, *nisi,* the sale to the appellees.

Afterwards, on the 4th of December 1856, but before the final order of ratification, the appellees filed their petition, charging that when they purchased this tract of land, it was represented to them by the trustees, or their agent, that it contained seven hundred and sixteen acres, of which the said James Kent was entitled to one-half, or three hundred and fifty-eight acres, and that a plat of the same was exhibited to them by Mrs. Mary Kent, then acting as the agent of the trustees, which represented said tract as containing seven hundred and sixteen acres; that they believe said trustees had previously endeavored to have the land surveyed, but it had not been done, and they had sold this undivided half part to Gantt, at $12 per acre, as containing three hundred and fifty eight acres, which sale was afterwards annulled; that believing the land did contain the above number of acres, they agreed to give said trustees for the said undivided half part, supposed to contain three hundred and fifty-eight acres, the sum of $6300, and that they paid a part thereof in cash, but have not given their bonds for the residue; that they have recently had part of the whole tract surveyed, for the purpose of division of their moiety, and, to their great astonishment,

Kent, *et al.*, *vs.* Carcaud.

find that the whole tract only contains four hundred and ninety-eight and a half acres, making their purchase only two hundred and forty-nine and a quarter acres, instead of three hundred and fifty-eight acres, as they supposed it was when they agreed to purchase it at private sale, and therefore the land has fallen short nearly one-third part of what they supposed it to contain when they purchased it; that it would be most unjust that they should be compelled to pay the full amount which they contracted to give when they supposed the land contained three hundred and fifty-eight acres, and they pray that the trustees may answer the allegations of this petition, and for an order making a deduction from the purchase money, proportionate to this deficiency in the land.

The trustees, in their answer, say they sold the land to the petitioners for the gross sum of $6300, as appears by their report of sale of the 7th of September 1855; they state that they had examined the plat of said land found amongst the papers of said James Kent, and that they believed, from said plat, that the said land sold to the petitioner was a little more than three hundred and fifty acres, and that they sold the same to the petitioners for three hundred and fifty acres, *more or less*, they, the trustees, assuming, in consequence of the ascertained difficulty of having an actual survey, to *estimate* it as containing that quantity, and the petitioners assuming to take it for that quantity *without a survey;* they concede it would be a very hard case upon the petitioners to be made to comply with their contract, if, in fact, the deficit in the quantity actually exists, as set forth in their petition, but that these respondents have no interest in or control over the matter, and must submit the same to the decision of the court, suggesting, however, that the extent of the relief will, at most, be the difference between three hundred and fifty acres, at the rate of their purchase, and the quantity received by the petitioners, at the same rate per acre.

A statement of facts was then agreed upon, by which it is admitted that at the time the land was sold by the trustees to the appellees, the trustees *supposed the land contained seven hundred and sixteen acres, that being the quantity shown by*

Kent, *et al.*, *vs.* Carcaud.

*a plat thereof, found by them amongst the papers of James Kent;* that it now appears, by a plat of the land by John Duvall, surveyor, filed in the case, that the land, in fact, contains but five hundred and thirty-eight acres; that the agreement of sale between the petitioners and the trustees, and the letters of the petitioners and of Gantt, on file in the case, are to be considered as if proved under a commission. It is also agreed that the questions to be decided are, whether, as insisted on by the purchasers, a deduction is to be made for the alleged difference in the quantity of land, or whether, as insisted on by the trustees, no deduction is to be made, because, as they allege, the sale was made for so much money in gross, irrespective of the quantity of said land, or whether, in the event that the court shall be of opinion that the sale should not be ratified, because of such deficiency, the trustees may not return to the purchasers the money paid by them, and cancel the sale, they insisting that the land was then, and is now, worth more than the sum agreed to be paid for it.

The court, (BREWER, J.,) in its opinion accompanying the order appealed from, after stating the facts of the case, as above set forth, said:

"It is stated, however, in the answer of the trustees, that they believe, from a plat which they had seen, that the moiety of the land was a little more than three hundred and fifty acres, but not being able to get a survey made, they agreed to sell, and the petitioners to take, the land for three hundred and fifty acres, *more or less.* These facts are further established by an admission in the case.

"As I have stated, the terms *"more or less"* are not contained in the report or contract filed with it. It is clear that both the trustees and the purchasers supposed the moiety to contain about three hundred and fifty acres, but not being able to get a survey made, to ascertain the exact quantity, they agreed to sell and to purchase it as for that amount, for a sum in gross, the terms *"more or less"* applying to the deficiency or excess in that amount by a few acres. It is evident that neither party entertained any suspicion of so great a deficiency as is now established by actual survey, to wit:

about one hundred acres, nearly a third of the whole. Without referring to any other authorities, this case appears to be settled by the decision of the Court of Appeals, in the case of *Marbury vs. Stonestreet*, 1 *Md. Rep.*, 147. Judge Tuck there says, where land is sold in gross, for a certain sum, upon a statement of the number of acres, quantity must be regarded as a material consideration with the vendee. That case and the cases referred to in the opinion, are not as strong as this. The vendor will get considerably more for the two hundred and sixty-nine acres, than the former purchaser, Gantt, would have paid for the three hundred and fifty acres.

"It is, therefore, this 28th day of September 1858, adjudged and ordered, that the purchasers be allowed ratably for the deficiency, and that the trustees settle with them accordingly; that is, as 358 would be to 6300 so will 269 be to the amount to be paid, but no costs to be allowed to the petitioners."

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Thos. G. Pratt* and *Wm. H. G. Dorsey*, for the appellants:

1st. The averments of the answer are to be taken as true, unless contradicted by the proof or admissions in the case, and, from this answer, it clearly appears that the purchasers took the land to avoid the necessity of a survey, at 350 acres, and the trustees, for the same reason, sold the land at that estimated quantity, and the deficit would, consequently, be the difference between 350 acres and the quantity now ascertained, and not 358 acres, as directed by the judge's order.

2nd. The contract was for the undivided half part of the tract called "Over the Creek," without reference to quantity, and although the trustees thought the half sold contained more than 350 acres, the purchasers agreed to dispense with a survey, and pay the sum agreed upon for the one-half of said tract. There was no agreement, expressed or implied, that the subsequent ascertainment of a surplus or deficit above or below the estimated quantity, would entitle the trustees to demand more, or the purchasers to pay less, than the sum

agreed upon. The thing bought, was the one-half of the Over the Creek Farm, lying next the river, and the words "*more or less*" could not have been appropriately added to this contract. 2 *Gill*, 125, *Jones vs. Plater.* 9 *Gill*, 447, *Stull vs. Hurt.* 15 *Md. Rep.*, 551, *Hall vs. Mayhew.* 6 *Binney*, 102, *Smith vs. Evans.* 4 *Mason*, 418, 420, *Stebbins vs. Eddy.*

3rd. It is insisted that if the contract in this case is to be disturbed at the instance of the purchasers, that the trustees should have the right to rescind it. If the one side is unwilling to abide by their written contract, and that contract is to be disturbed at their instance, then the other side should have the corresponding right, instead of submitting to the change of the contract, to rescind it altogether.

*A. B. Hagner*, for the appellees,

1st. The answer of the trustees sets up new matter *in avoidance*, not responsive to the allegations of the petition, and cannot be used as evidence. It sets up a new contract; it contradicts the written contract by the interpolation of the words "*more or less.*" This it was not competent for the trustees to do, and the matter thus averred in avoidance is not evidence. 3 *Gill*, 429, *Fitzhugh vs. McPherson.* 1 *H. & G.*, 81, *Ringgold vs. Ringgold.* *Alex. Ch. Pr.*, 79, 80.

2nd. The statements of the trustees and their agent, and especially the exhibition by them of the plat to the purchasers, were equivalent to an averment that this land to be sold contained 350 acres or more, and under that belief and assurance the purchasers contracted to purchase, for the sum of $6300, that quantity of land, without using in their contract the words "*more or less,*" or any such qualifying expression, and as it is now ascertained that the quantity of land is only 269 acres, an abatement should be made out of this purchase money, for so much as the quantity of land falls short of this representation. 1 *Story's Eq.*, secs. 140, 141, 192, 193, 195. 2 *Bland*, 641, *Andrews vs. Scotton.* 3 *Cranch.*, 270, *McFerran vs. Taylor.* 17 *Ves.*, 401, *Hill vs. Buckley.* 1

*Md. Rep.*, 147, *Marbury vs. Stonestreet*.   15 *Md. Rep.*, 551, *Hall vs. Mayhew*   13 *Pet.*, 26, *Smith vs. Richards*. 2 *Sneed*, 125, *Horn vs. Denton*.   This abatement can now readily be made as the sale has not been confirmed, or its terms complied with, the purchase money not disposed of and under the control of the court.   2 *H. & G.*, 346, *Anderson vs. Foulke*.

3rd. To cancel the contract entirely, and return the purchase money paid, to the purchasers, as suggested by the appellants, would be unjust and oppressive to the purchasers. It would require them to surrender the farm which they have held for years and greatly improved, without any compensation.

TUCK, J., delivered the opinion of this court.

The principles governing cases of this kind are well settled, though the courts many times find difficulty in applying them.

Here there is no pretence of fraud, concealment or wilful misrepresentation; it is a case of mutual mistake on the part of the trustees and purchasers, all the parties to the sale believing that the land contained much more than was afterwards found to be correct. The question for decision is, what, if any, abatement the court, as vendor, ought to make from the sum agreed to be paid by the appellees?

If we look to the written agreement alone, there is clearly no ground for any deduction. According to its meaning, the appellees agreed to pay a sum certain, in gross, for one half a farm, by name, without mention of the quantity, or reference to a plat, or any stipulation on the part of the vendors. The thing bargained for was a particular farm for so much money. But it is alleged that the appellees made the purchase under the belief that the farm contained 716 acres, produced by the representation of the trustees, and the exhibition of a plat to that effect. If this be so, equity will not hold them to the payment of the amount agreed to be paid, because the exhibition of a plat is equivalent to an averment

of the number of acres, and it may be shown that a written contract was entered into in consequence of a misrepresentation by the other party, though innocently made. *Marbury vs. Stonestreet*, 1 *Md. Rep.*, 147. *Joice & Wife vs. Taylor*, 6 *G. & J.*, 58.

In the notices of sale for July 1853, and July 1854, the trustee "supposed the farm to contain about 500 acres," but when the sale to Gantt was reported they had learned that it contained 716 acres, of which Kent was entitled to one half. Soon after this we find them treating with the appel·lees—Gantt having been discharged from his contract—which treaty resulted in the agreement of the 4th of Sept. 1855. There is no proof that Mrs. Kent had any thing to do with the treaty, or that she showed a plat of the land, but the answer and the agreement of counsel establish that there was a plat as stated in the petition, and that the trustees and vendees acted under the belief that the farm contained the quantity indicated by the plat, and we have no doubt that the purchase was made in reliance upon that for the number of acres, and that the trustees were of the same opinion, and so represented at the time of the treaty. They said in their report of August 1855, that they were informed that the land contained 716 acres, and it was their duty, in any subsequent negotiation, so to represent, if they believed the information reliable.

It is alleged in the answer of the trustees that the appellees agreed to take one half the farm for 350 acres, *more or less*, and the appellants claim the benefit of this averment as showing that the appellees took the risk as to quantity. To allow this would be to introduce a qualification into the written agreement, by which the obligations of the parties would be materially changed. The appellees do not deny that they made the contract of September 1855, but they say that there was a representation made at the time upon which they acted; this was the ground of the relief sought, and the trus·tees were not authorised, in answering the petition, to set up a treaty or terms agreed upon before the written contract was

made, inconsistent with the legal import of the instrument, which must be considered as having merged all previous negotiations resting in parol. Here the written agreement of the 4th of September, is the contract of purchase, and the allegation by the trustees of any contrary stipulation cannot be received. If there was proof that these words, "more or less," were agreed upon in the treaty, and had been omitted from the written contract, the defence would stand upon a different principle. *Jones vs. Hardesty,* 10 *G. & J.,* 404. *Worthington vs. Bullitt,* 6 *Md. Rep.,* 172, and 3 *Md. Ch. Dec.,* 99. 1 *Johns. Ch. Rep.,* 273. 4 *Md. Rep.,* 36, *West vs. Flannagan.*

But this view does not apply to that part of the answer which is responsive to the allegation in the petition as to the representation of the number of acres. The petitioners must have relief, if at all, according to the case made by their petition, and they can succeed only so far as it may be admitted or proved. Here they allege that there was an averment, or what was equivalent, that the land contained 716 acres, and that they made the purchase, in consequence, of one half of that quantity. This statement it was the duty of the trustees to answer, and their answer, unless disproved, binds the petitioners. They say that they sold half the farm assuming it to be 350 acres, and that the appellees agreed to take it for that quantity. There is nothing to rebut this view of the case, and we think it is sustained by other circumstances apart from the answer. *Jones vs. Belt,* 2 *Gill,* 106. *Glenn vs. Grover,* 3 *Md. Rep.,* 212. Our conclusion is, that the deduction should have been allowed in the proportion of 350 acres to the actual quantity, instead of 358 to that number of acres.

In regard to the point, that the sale should be rescinded entirely, if the court interfere at all, we may remark that the general rule is, that the vendee shall have what the vendor can give, with an abatement out of the unpaid purchase money for so much as the quantity falls short of the representation, and we perceive nothing in the record to except this case from the established doctrine. 1 *Md. Rep.,* 147.

The cause will be remanded for further proceedings, in conformity with the views here expressed, with costs of the appeal to the appellants.

*Cause remanded, with costs of*
*the appeal to the appellants.*

(Decided Oct. 3rd, 1861.)