WM. J. O'BRIEN, JR., Administrator, *vs.* GARNET Y. CLARK, Trustee.

*Description .of Land in a Devise—When Designation of Quantity is Controlling—Leasehold Property Passing Under a Devise of Real Estate.*

When a testator, who owns two adjoining parcels of land at the intersection of two streets, devises his real estate at that corner and describes it only as containing a certain number of square feet, then quantity controls, and the devisee takes only that parcel which contains about the number of square feet mentioned.

A man purchased a leasehold lot of ground beginning at the intersection of Baltimore and Carey streets, fronting forty-two feet on the latter street and running back one hundred and fifty feet on Baltimore street. Two years afterwards he bought the adjoining property in fee beginning on Carey street forty-two feet from said corner and running back the same distance. A narrow alley way running from Baltimore street divided the first-mentioned lot into two parts so that the leasehold property running back to it from the corner of Carey street contained 1,534 square feet. By his will the owner devised to a trustee "my real estate corner Baltimore and Carey streets containing about 1,500 square feet." The will made no other devise of property in that locality, but there was a residuary clause. *Held,* that the devisee is not entitled to all the land owned by the testator fronting as above mentioned on Carey street, which contains 12,600 square feet, but takes only that part of the leasehold property beginning at the corner, fronting forty-two feet on Carey street and running back to the alley, which contains 1,534 square feet, and that the remainder of testator's real estate in that locality passed under the residuary clause.

Leasehold property passes under a devise of real estate when such appears to have been the intention of the testator.

*Decided June 15th, 1906.*

Appeal from the Circuit Court No. 2, of Baltimore City (Wickes, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Wm. J. O'Brien, Jr.,* and *Ralph Robinson,* for the appellant.

*John C. Tolson* and *Wm. M. Maloy* (with whom was *Olin Bryan* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2, of Baltimore City, construing a clause of the will of the late Joseph Zane, of the city of Boston. It is as follows: "I give, devisee and bequeath to John Grace Suman, of Baltimore, Md., my real estate corner of Baltimore and Carey streets, in said Baltimore, containing about fifteen hundred square feet of land and the buildings thereon, and the sum of twenty thousand dollars, in trust nevertheless, for the uses and purposes following, towit." It then directs the annual income of said real estate and from the money to be paid quarterly to his nephew, Joseph Zane, for his natural life, and that after his death "the remainder of said real estate and said twenty thousand dollars shall go to" his grand niece, a daughter of Joseph Zane, during her life "and to her children in fee simple," if she leaves issue, and provides that if she dies without issue, the real estate and money shall go to his heirs at law discharged of all trusts.

The question to be determined is what the testator intended by "my real estate," etc., in this clause. A statement of facts was made by the attorneys and concluded by agreeing that the case be "set down for hearing on the bill, answers, exhibits, replication and the above agreement." The testator purchased by deed of May 7th, 1883, the *leasehold* interest in a lot of ground described as beginning "at the corner formed by the intersection of the north side of Baltimore street and the west side of Carey street, and running thence northerly bounding on Carey street forty-two feet and one inch, thence westerly parallel with Baltimore street one hundred and fifty feet or thereabout to Woodyear alley twenty feet wide; thence

southerly bounding on Woodyear alley forty-two feet and one inch to Baltimore street, and thence easterly bounding on Baltimore street one hundred and fifty feet or thereabouts to the place of beginning.'' That lot is subject to an annual rent of $280. •

Just two years afterwards, towit, on May 7th, 1885, a lot was conveyed to the testator *in fee*, fronting on Carey street, and running back to Woodyear alley, with an even width of forty-two feet and one inch. The deed for this lot calls to begin on Carey street forty-two feet and one inch from the corner of Baltimore and Carey streets, but it does not call for the leasehold lot. He thus had and still owned when he made his will, and when he died, property fronting on Carey street eighty four feet and two inches, running back to Wood-year alley and bounding on Baltimore Street—one-half of which was leasehold and the other half in fee. The exact depth of the whole property from Carey street to Woodyear alley is one hundred and forty-six feet and four inches, as shown by the plats filed.

When the testator purchased the two lots, they were improved as follows: There was a three-story brick house on each side of the division line between the two lots, with a party wall on the line, known respectively as No. 4 and No. 6 North Carey street, each house having a frontage of twenty-three feet and one inch and having originally a side yard to each of nineteen feet, fronting on Carey street. The side yard of No. 4 North Carey street also bounded on Baltimore street, and before Joseph Zane purchased the properties that side yard was improved by a two-story building known as 1300, 1302 and 1304 West Baltimore street, covering sixty feet and six inches, also by a stairway leading to the second story of that building a little over five feet wide, by a one-story frame building west of the stairway, known as 1306 West Baltimore street and fronting fifteen feet thereon, and another one-story frame building west of that known as 1308 West Baltimore street and fronting fourteen feet thereon. After Joseph Zane purchased the lots he erected a large brick

building along Woodyear alley, which fronted forty-eight feet
and one inch on Baltimore street and ran back eighty-four feet
and two inches—one-half being on the leasehold lot and the
other half on that owned in fee.   The lower part of that is
used as a livery stable and the second floor as a public hall
known as Zane's Hall, and to the east of it there is an alley
way fronting three feet and six inches on Baltimore street.
We will request the Reporter to print the plat marked "De-
fendant Boteler's Exhibit A," as it sufficiently describes the
lots and improvements.   It is admitted that the testator, for
years before the execution of the will, lived in Baltimore one
or two months of every year, and while in said city resided at
No. 4 North Carey street, and hence was familiar with the
property.

The entire tract—including the leasehold and the lot owned
in fee—contains *12,600* square feet of land, while the two-
story brick building (Nos. 1300, 1302 and 1304 West Balti-
more street), the stairway and the one-story frame house (1306
West Baltimore street) occupy *1,534* square feet of land.   The
appellees contend, and the lower Court so decided, that the
testator intended by the above devise to only include the 1,534
square feet, while the appellant claims that the will should be
construed to include the entire property—containing 12,600
square feet.

It is well established that quantity is the least certain ele-
ment of descriptions of lands, but in the absence of some
more definite description it may be controlling.   In 5 *Cyc.*,
929, it is said: "Quantity, although less reliable and last to be
resorted to of all descriptions of boundaries, may, neverthe-
less, in doubtful cases, have weight as a circumstance in aid
of other calls, and in the absence of other definite description
it may have a controlling force."   In 4 *Am. & Eng. Ency. of
Law*, 789, the general rule is announced, and then on pages
790 and 791 it is said: "Quantity aids in ascertaining the
premises granted when they are not described by known and
established boundaries," and again, "Quantity controls in the
following cases: Where it is of the essence of the contract;

where the other parts of the description are not sufficiently certain in defining the parcel of land intended to be conveyed; where there is a clear intention expressed in the deed to convey a certain quantity only; where there is an express or implied covenant in the deed to convey a definite quantity; and where there are no calls for monuments or for courses and distances set out in the deed." While some of the instances mentioned in the last quotation are not applicable to the construction of wills, others are not only applicable but important when construing a will having such a description of property as this, and the general rule announced above is fully sustained by those two authorities.

When the testator added to the devise of his real estate corner of Baltimore and Carey streets the words, "containing about fifteen hundred square feet of land and the buildings thereon," it would seem that he must have had some object in view—particularly when we remember that he had more than eight times that amount of land at or near that corner. He did not mention the number of square feet in the property left to his brother, Peter Zane, but described it as the house he lives in, now numbered 1334 Stricker street, Baltimore, Md., in fee simple." So the house he left to his sister, Eliza Jane Osler, he described as "the house she now occupies, now numbered 229 North Gilmor street, Baltimore, Md., in fee simple." The only other devise he made in which he stated number of square feet was that of his Washington street property in Boston. The reason for that does not appear, and in the same trust he included his house and land on Blossom street, corner of McLean street in Boston, without stating the number of square feet. There being nothing in the record from which we can ascertain whether the property on Washington street, devised by the will, included all the testator's real estate on that street, or from which we can find any special reason for naming the number of square feet, that devise does not throw any light on the question before us. But inasmuch as he did not designate the number of square feet n either of the other properties in Baltimore, or in any but

the one property in Boston, it is fair to assume there was some reason for doing so in this instance. The most reasonable explanation for it is that he did not intend to devise all of his real estate at the corner of Baltimore and Carey streets. If he intended to include all, he could simply have said—"*all* my real estate at the corner," etc., or have given the frontage on the two streets, but when he used the expression quoted above he indicated that he only intended to devise some part of his property at that corner which contained about the number of square feet mentioned by him.

There are two prominent facts disclosed by the record which convince us that such was his intention. In the first place it will be remembered that he purchased this property at two separate times, in two distinct lots. The description of the leasehold shows that *it* was on that corner, as will be seen by the deed of May, 1883—beginning at the corner formed by the intersection of the two streets, and bounding on both of them for the distances named, but the other lot, purchased two years after the first, was not described as being at the corner of those streets, and it commenced forty-two feet and one inch from that corner, and no part of it is nearer than that distance from Baltimore street. The testator manifestly could not have intended to devise the whole of the *leasehold* lot, for he had erected Zane Hall so that one half of it was on that lot, and the other half on the one held in fee, and that building was on the corner of Baltimore street and Woodyear alley, and not on the corner of Baltimore and Carey streets.

But in our opinion the agreed statement of facts conclusively settles the question, and therefore we will quote from it at some length. It states, "there is no lot at the corner of Baltimore and Carey streets, containing exactly fifteen hundred square feet of land, but that the lot known as 1300, 1302 and 1304 West Baltimore street, being a two-story store, together with the small lot covered by the stairway leading to the second floor of said store, and the one-story frame building known as 1306 West Baltimore street, contain a lot of ground fifteen hundred and thirty-four square feet which is directly at

the intersection of Baltimore and Carey streets, *and separate and apart from the other property of the said testator.*" We, therefore, find that when the testator made his will he had a property (if we treat it as an entirety), which was bounded on the east by Carey street, on the west by Woodyear alley, on the south by Baltimore street and on the north by a line running from Carey street to Woodyear alley, eighty-four feet and two inches from Baltimore street, which contained 12,600 square feet, but a part of that entire lot (embracing 1300, 1302, 1304 and 1306 Baltimore street and a small strip occupied by the stairway) was directly at the intersection of the two streets, contained 1,534 square feet and was separate and apart from the other property of the testator. That which was separate and apart from the other corresponds with the description in the devise, as to *location and* also as to *quantity* (for 1534 are *about* 1,500 square feet), while to adopt the appellant's theory at least one-half of the whole property cannot accurately be said to be at the corner of the two streets, and the devise would include more than eight times as many square feet as the will mentions.

It would, therefore, be unreasonable and without warrant of law for the Court to reject from the description the number of square feet mentioned in the will, and assume that the testator in point of fact intended to include 12,600, although he said about 1,500 square feet. It is said, however, that inasmuch as the leasehold lot purchased by the testator in 1883 is subject to an annual rent of $280, the 1,534 square feet will be of little value and that it will be difficult, if not impossible, to apportion the rent between that property and the rest of the leasehold. That of course can be considered in endeavoring to ascertain the intention of the testator, but it cannot prevail over what seems to us to have clearly been his intention. There are many instances in Baltimore of a number of properties being originally embraced in one lease, and undoubtedly such a condition oftentimes has a tendency to lessen the value of each sub-division. Sometimes the apparent difficulties can be removed, or very much lessened by the

parties owning the leasehold interests agreeing among them-
selves as to the proportion each is to pay, and if the owner of
the ground rent is willing, an agreement between him and the
owners of the leasehold can be made, so as to fix the amount
to be charged to each particular party.    Even if the owner of
the fee refuses to consent to an apportionment, the lease-
holders can probably arrange amongst themselves to have the
rent collected according to the value of the respective parts,
and to have it paid over to the landlord.    But however that
may be, the testator had the privilege of leaving his property
as he saw fit, and the devisee cannot be required to take it, if
he thinks it worthless.    In this case it so happens that by the
codicil of the will the one-third part of the residue of the
estate is left to Joseph Zane "subject to the same trusteeship
and conditions as stated in my will of March 31st, 1896." As
the rest of this property will pass under the residuary clause, the
trustee for Joseph Zane can probably make some arrangement
which the Court will approve of, so that the rent can be
properly apportioned.

The agreed statement shows that the testator left some real
estate in Boston which he did not specifically devise, but
which passed under the residuary clause.    It cannot be
assumed, therefore, that he intended to make specific devises
of all his real estate in Baltimore.

We have thus far not referred to the fact that under our de-
cisions this lot (containing the 1,534 square feet) is not, tech-
nically speaking, "real estate." It may be said in passing that
both the appellant and the appellees concede that *some of the
leasehold* estate of the testator passed by this devise—the one
contending that all of it did, and the other that only part did,
but, regardless of that concession, we think there can be no
doubt that the testator did not mean to exclude his leasehold
estate by the expression "real estate."    In *Taylor* v. *Taylor*, 47
Md. 295, this Court adopted the construction given such an
expression by the English Courts, prior to the Statute of 1
*Victoria*, ch. 26, sec. 26.    It was said in *Rose* v. *Bartlett*, Cro.
Car. 292, "that if a man *hath* lands *in fee* and lands *for years*,

and deviseth *all* his *lands and tenements*, the fee simple lands pass only and not the lease for years; and if a man hath a lease for years and *no fee simple*, and deviseth all his lands and tenements, the lease for years passeth, or otherwise the will should be merely void." After referring to that and other English cases, the Court said in *Taylor* v. *Taylor*, "There authorities suffice to show how firmly this rule was established in the law of England, and as we have in this State no statute that has abrogated it, those decisions are entitled to great weight here," but it went on to say: "But assuming, as we think we must, that the rule adverted to is not an absolute inflexible rule of property, but must yield to an indication of the testator's intent, and therefore, if the will contains evidence that he meant the leaseholds to pass with the freeholds, it will be so construed, how stands the case?" It was held in that case that the leaseholds did not pass under the devise of "all my real estate (houses and landed property)" but it was because the Court reached the conclusion that the testator intended them to pass as personal property, under another clause of the will.

There can be no doubt of the intention of this testator on this point. He had no property which was "real estate," in the strict sense of that term, at the corner of Baltimore and Carey streets, for as we have seen, the property held by him in fee was forty-two feet and one inch from that corner, and it is manifest he regarded his leasehold property as real estate. Indeed we might apply the second rule stated in *Rose* v. *Bartlett*, for as the testator had no land in fee at that corner but did have this leasehold interest, the latter "passeth, for otherwise the will should be merely void," in so far as this devise is concerned.

So without deeming it necessary to dwell on the difference between our leasehold estates and those considered in some of the old cases in England, where leases with covenants for perpetual renewal were not generally used, as that has already been so clearly pointed out by the present Chief Judge of this Court in *Culbreth* v. *Smith*, 69 Md. 450, or to refer to the

many ways in which leasehold properties such as this resemble real estate, we are of the opinion that the testator did intend to only include in this devise the part of the leasehold property containing 1,534 square feet, and that the rest of this property passed under the residuary clause of the will as changed by the codicil. It follows that the decree of the lower Court so determining must be affirmed.

> *Decree affirmed, the appellant to pay the costs.*