HENRY W. WAGNER *v.* GEORGE J. BING ET AL.

[No. 32, October Term, 1932.]

*Decided December 8th, 1932.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William Purnell Hall;* for the appellant.

*Eldridge Hood Young,* with whom were *Howard C. Bregel* and *Young, Crothers & Settle* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The plaintiff entered into a written contract with the defendants for the purchase and sale of land in the City of Baltimore. There is no question of the ability, readiness, and willingness of the defendants to convey by a good and marketable title, nor of the desire of the plaintiff to perform his part of the contract according to his construction of its terms. The sole cause of the controversy between the parties arises from the claim of the plaintiff that the land was sold upon the representation that it contained a minimum quantity of seven acres, and that a survey, which the plaintiff had made after the execution of the contract, ascertained the actual area to be practically six acres.

By reason of his contention that he was entitled to make an abatement in the purchase price that would be proportionate to the reduction in acreage, the plaintiff so offered performance of the contract; but the defendants declined to accept this offer, on the specific ground that the stipulations of the contract required the plaintiff to pay the full purchase price, because the land had been sold as an entire parcel without any obligation with reference to a particular quantity. On the theory of his right to a ratable reduction in the purchase money and, then, with the price so diminished, to enforce specifically the contract, the bill of complaint at bar was filed. The answer of the defendants denied that any representations had been made to the plaintiff with regard to the quantity of land in the parcel agreed to be sold, and asserted that the entire contract between the parties was found in their written agreement, which the defendants prayed should be enforced, according to its terms, against the plaintiff in the cause which he had instituted. The testimony was taken before the chancellor, who, without hearing the witnesses on the part of the defendants, dismissed the plaintiff's bill of complaint; and the plaintiff has appealed.

Fraud, whether consisting of false representations, intentional concealments, or of any other deceptive practices, does not make the contract void, but only voidable at the election of the injured party, and, therefore, he may always waive the

fraud and ratify the contract and thereby make it as binding as though the contract had originally been free of all fraudulent elements or circumstances. The waiver may be express or it may be implied from acts which, when done with complete knowledge of all the material facts, show an intention to adopt the contract or to claim and to enjoy, in whole or in part, its benefits. *Pomeroy on Specific Performance* (3rd Ed.), secs. 279, 222.

Moreover, should a vendee prove that the vendor represented the land sold to contain a specific quantity of land, and that such representation misled the vendee and was a material inducement to the contract, and that the amount of land the vendor was able to convey was less than the vendee agreed to buy, the vendee may usually obtain relief in such a case, since a court of equity will endeavor to maintain the rights of both parties and will enforce the contract without regard to the failure in part of the subject-matter, by decreeing, at once, a conveyance of the vendor's actual interest, and allowing to the vendee a compensation in money or an abatement from the agreed purchase price that will be proportional to the value of the deficiency. *Pomeroy's Specific Performance* (3rd Ed.), secs. 437, 438; *Marbury v. Stonestreet,* 1 Md. 147, 152; *Hall v. Mayhew,* 15 Md. 551, 567; *Kent v. Carcaud,* 17 Md. 291; *Mendenhall v. Steckel,* 47 Md. 453; *Balto. Perm. Bldg. etc. Soc. v. Smith,* 54 Md. 187, 203; *McLaughlin v. Leonhardt,* 113 Md. 261, 273, 274, 77 A. 647; *Somerville v. Coppage,* 101 Md. 519, 524, 61 A. 318.

In the present case the testimony fails to establish any actionable representation with respect to the amount of acreage in the land agreed to be conveyed that the plaintiff was entitled to rely upon. There is testimony that one of the defendants told the plaintiff that the parcel to be conveyed had, probably, an area of seven and one-third or more acres, and had, assuredly, a minimum of seven acres; and that the price of $22,000 was reached upon the first basis, at the rate of $3,000 an acre. The plaintiff desired to transform this estimate into a promise and endeavored to have the defendants agree to convey this amount of land. The defend-

ants were unwilling, but the plaintiff persisted; and, so, when the plaintiff presented for their execution a contract which he had had prepared and which contained the declaration that the quanttiy of land sold was "about seven and one-third acres at $3,000 per acree, or twenty-two thousand dollars," the defendants refused to sign until this clause was omitted and a contract substituted for a sale of the tract in gross, by its description on an incorporated plat, and for the unqualified and certain purchase price of $22,000. Under these decisive circumstances, it is manifest that the omission of the quantity of land was not the result of a mistake or fraud, but because the parties had agreed that the subject-matter was sold and bought in gross at a fixed price, and that the vendors would convey according to their undertaking if the deed would convey the land of the vendors as shown and described on the plat. If the court were to interpolate in the terms of the written contract the clause that the sale was of a tract of "about seven and one-third acres at $3,000 per acre," the instrument would not thereby be rectified so as to express the real agreement of the parties on a material point; but would revive a rejected basis of sale. Thus the sale and purchase of the land, with all representations in respect to quantity, is found completely embodied in a single written instrument, and, therefore, all other utterances of the parties are legally immaterial and, so, inadmissible for the purpose of determining what are the terms of their contract. *Wigmore on Evidence* (2nd Ed.), secs. 2425, 2430, p. 289; *Whitelock v. Whitelock,* 156 Md. 115, 119, 143 A. 712; *Brummel v. Realty Co.,* 146 Md. 56, 66, 125 A. 905; *Bond v. Weller,* 141 Md. 8, 118 A. 142; *Rafferty v. Butler,* 133 Md. 430, 432, 105 A. 530; *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540, 545, 96 A. 762.

In other words, any oral or other representation of the quantity of the subject-matter is superseded or extinguished by a subsequent written agreement in which the parties have expressly dealt with the matter of quantity. *Supra.* In the cause at bar the parcel was sold as an entirety, but what passed was determined by a plat and the terms of a contract

in writing in which the plat was expressly incorporated. This plat was of a survey made of the entire tract by the City of Baltimore, and, while the area contained was not given, the four exterior rectilinear lines, which bounded the tract as well as those which bounded the lot reserved, and the right of way acquired by the City of Baltimore for the opening of a public highway, were all shown. The plat and contract gave all the metes, bounds, and distances, with the courses of three of the four outside boundary lines, and the fourth was on Holder Avenue, a street of Baltimore City. Chancellor Kent's statement of the rule applicable is: "Whenever it appears by definite boundaries, or by words of qualification, as 'more or less' or as 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed is mere matter of description, or not of the essence of the contract; the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case." 4 *Kent, Comm.* (11th Ed.), 467; 1 *Sugden on Vendors* (8th Am. Ed.), p. 490, note (*d*); *O'Brien v. Clark,* 104 Md. 30 ,34, 35, 64 A. 53; *Pomeroy on Spec. Perf.* (3rd Ed.), sec. 454.

Here the statements by one of the vendors of an uncertain acreage become a mere matter of description, because the definite boundaries distinctly appear by the contract, when read in connection with the plat, and the plaintiff assumed the risk of the quantity. *Jenkins v. Bolgiano,* 53 Md. 407, 420, 421; *Jones v. Plater,* 2 Gill, 125; *Hall v. Mayhew,* 15 Md. 568. The cases of *Reigart v. Fisher,* 149 Md. 336, 339, 340, 345-347, 131 A. 568, and *Tolchester Beach Improvement Co. v. Boyd,* 161 Md. 269, 156 A. 795, are illustrations of the application of the rule stated to cases presenting facts which are different from those on this record.

It may be added that the plaintiff had the boundaries of the property pointed out to him several months before the contract was made; and that he was an experienced operator in real estate and had bought the tract so as to consolidate it with an adjacent tract he had acquired for the purposes of their development by division and sale in lots. The outlines of the tract, of the lot reserved, and of the right of

way of the city for a street, formed three simple geometrical figures of four sides, whose area could have been accurately estimated or calculated by the plaintiff. If a man knows what he is buying and its boundaries and will not take reasonable care to ascertain its area, after the seller refuses to promise what it contains, and then enters into a contract to buy according to its given surveyed platted lines but without any mention of the area, it would open wide the door to fraud, if he could get an abatement by saying he believed it contained seven acres and it only contains six. The evidence is convincing that the plaintiff did not rely upon any oral statement of area in making the contract. *Tyson v. Hardesty,* 29 Md. 305, 308-310.

It follows that the pending cause involves a promise and not a representation and must be decided in accordance with the terms of a contract of sale and purchase as expressed and contained in the written agreement of the vendors and vendee. *Corbin's Anson on Contracts,* secs. 200, 202. This instrument makes clear and certain that the land was not sold by the acre nor to contain any specified quantity. Furthermore, the purchase price was the definite sum of $22,000, and, so, before any question of its abatement can arise, the plaintiff must aver and prove that the defendants are unable to convey what they agreed to sell. The description of the land sold must be found in the contract, which consists of an agreement in writing and its attached plat. The agreement describes the property sold as being in Baltimore City and comprising "all of the property belonging to the parties of the first part (the defendants) as shown on the attached plat, which plat is made a part of this agreement, excepting therefrom the portion of said property outlined in yellow and marked 'Reserved' on said attached plat (said 'Reserved' portion having a frontage of fifty (50) feet on the northwesternmost side of Walther Boulevard, with a depth of even width of one hundred seventy-seven (177) feet, more or less, to the southeasternmost side of Holder Avenue) in fee simple, at and for the price of twenty-two thousand ($22,000) dollars."

This plat is a blueprint of a section of the official plat of the survey made for the opening of Walther Boulevard across the land of the defendants in accordance with the provisions of Ordinance No. 289 of Baltimore City. The real estate agent who effected the sale got this blueprint from the bureau of plans and surveys, and submitted it to the vendors and vendee, who indorsed on its face, over their witnessed signatures, the verification: "This is the plat referred to in the attached agreement, and is made a part thereof." The plat is of a survey made by Baltimore City of the parcel of seven acres of land, more or less, conveyed to George J. Bing, Mary Bing and Sophia Bing as tenants in common on May 23rd, 1906. So far as the record discloses, it is an accurate representation of the exterior boundaries of this entire tract, since its differences with the description in the original grant, and the survey made by the plaintiff after the purchase, are so slight and trivial as to be negligible in the determination of the controversy at bar.

Nor is there any contention made that the vendors did not own in fee simple the parcel in question, and that there was not an explicit reservation of a small lot of land from its northwestern corner whose lines were superimposed upon the blueprint by the parties after they had obtained it from its public source. Before this alteration was made by the parties, the blueprint represented the whole parcel to have been separated into two parts by a strip of land of a uniform width of one hundred feet extending clear across the tract in question, and having for northern and southern boundaries two lines which were straight for most of their lengths but curved for a small distance, with a given radius. This strip was not the property of the defendants, as it had been appropriated by the city for the bed of Walther Avenue, a public highway, and so was excluded by the language of the contract. It is quite evident from the size, shape, utility and location of this strip, and the difference in its identifying symbols, that the strip of one hundred feet in width had been separated from the lot as a part of a public way. This conclusion is also evidenced by the use of much heavier lines to

distinguish the outlines of the strip from those of the remaining sections; by the breaking of its lines as they approach the eastern boundary of the original lot into a curve to the right; and, finally, by the prolongation of these heavy lines to the west and east beyond the confines of the original boundary lines.

The legend "George J., Mary and Sophia Bing, tenants in common. Fee Simple," printed on the strip, merely indicated the owners of the land and the nature of their interests for the information of the City of Baltimore in its acquisition of the right of way; and, coming from the possession of the municipal department charged with the opening of streets, this legend did not mislead the plaintiff nor nullify the clear *indicia* of the plat, as is plain when the plat is read as an entirety in association with the language of the contract and the circumstances under which it was made. The contract specifically reserved from the property thus surveyed and platted a part which is described as having a frontage on the northwesternmost side of Walther Boulevard with a depth of uniform width to the southeasternmost side of Holder Avenue. Although Walther Boulevard had not been built at the time of the contract, the parties recognized it, for the purposes of their agreement, as existing and opened for public use; and established its location as the strip of one hundred feet in width shown on the plat made by the public officials, and adopted by the vendors and vendees as an accurate representation of the situation with respect to which they entered into their contract.

Moreover, the buyer was an experienced dealer in real estate, and acquired the property for the purpose of consolidating it with another adjacent tract in order the better to develop the whole for residential purposes. The purchaser had seen the property in the first part of September, 1929, and there is no difficulty in finding that he knew that Walther Boulevard was to pass across the parcel in question on the right-of-way shown on the plat of the city. In fact, on December 13th, 1929, which was five days before the contract was signed, he had drawn his check of $1,000 for the

earnest money, and had written in the lower left-hand corner of the face of the check: "Deposit on acct. of Holder Avenue and the new proposed Walther Boulevard." And, in the first and later dismissed bill of complaint of the plaintiff in this matter, he described the parcel bought as being on Walther Boulevard. Where the avenue was located, the defendants could have no paramount title, inasmuch as the municipality had already acquired the title to the strip, and had assessed on the owners benefits in excess of the value of the land taken for highway use.

It follows that the vendors did not own the strip mentioned, and, since their sale was limited to the property then belonging to the vendor, this strip did not pass under the terms of the agreement. The result works no injury to the plaintiff, because the record shows the owners of the land were assessed benefits on the opening of the street, and the plaintiff's own testimony was that the entire parcel was made more valuable by the opening of the public street with its bed on the strip in question.

Since the defendants were able to convey as they agreed, the plaintiff is not entitled to an abatement, but is in default; and the decree of the chancellor properly dismissed the bill of complaint.

*Decree affirmed, with costs to the appellees.*