ROBERT TAYLOR, in his own right, and as *Prochein Ami* of ELEANOR TAYLOR, and others *vs.* ELEANOR TAYLOR, and others, Infants.

## WILLS.

*Construction of Wills—Devises of Real Estate and Leasehold Interests—When Leasehold Interests will pass under a devise of Lands and Tenements—Leaseholds for however long a period only Personal Property in Maryland.*

T. at the time of his death and at the date of his will was seized and possessed of lands, consisting of a farm which he owned in fee, and of several houses and lots, some of which he owned in fee, and in others he had but a leasehold interest under a lease or leases for ninety-nine years renewable forever. He also owned bank, insurance and railroad stock.    By his will he devised and bequeathed as follows:

(1.) I give to my son J. T. in trust, &c. all my *real estate*, (houses and landed property.)

(2.) I also give and bequeath to my son J. T. all my estate, (money, stock, &c.,) personal and *mixed* absolutely.    HELD:

That the leasehold estates passed to the son absolutely under the second clause of the will, and not to him in trust under the first clause of the will.

If a man hath lands in fee, and lands for years, and deviseth all his *lands and tenements*, only the fee-simple lands pass, and not the leases for years.

If a man hath a lease for years, and *no fee-simple*, and deviseth all his lands and tenements, the lease for years passeth; for otherwise the will would be merely void.

Under a general devise of all manors, messuages, lands, tenements and hereditaments, leasehold messuages will not pass unless it appear to have been the evident intention of the devisor that they should pass.

Leasehold interests, though derived under leases for ninety-nine years renewable forever, and therefore partaking of the nature of perpetual interests, and in their origin designed to be and capable of being made perpetual,

are nevertheless in the view of our testamentary and descent laws *personal estate.*

But if the will contain evidence that the testator intended the leasehold interests to pass, though he used only such words as would ordinarily pass real estate, it will be so construed.

It is the duty of the Court in construing a will to give effect to the testator's intention as far as it can consistently with the rules of law, not *conjecturing* but *expounding* his will from the words used.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C, J., BOWIE, MILLER, ALVEY, ROBINSON, BRENT and STEWART, J.

*Luther M. Reynolds,* for appellant.

*George R. Willis,* for appellees.

MILLER, J., delivered the opinion of the Court.

The only question we are called upon to decide in this case is, whether the leasehold property referred to in the record, passed under the first or second clause of the will of Robert Taylor. This will was executed in June, 1855, and admitted to probate in December, 1872, shortly after the testator's death. At the time of his death and at the date of the will, it is proved that he was seized and possessed of lands consisting of a farm in Baltimore County which he owned in fee, and of several houses and lots in Baltimore City, some of which he owned in fee, and in others, including the property in question, he had but a leasehold interest under a lease or leases for ninety-nine years, renewable forever. He also owned bank, insurance and railroad stock. He left but one child, a son, and by

his will, which is very short, he disposes of his property thus:

1st. After payment of debts and funeral expenses "I give to my son Talbot Jones Taylor, in trust to be held as long as he may live, without security, all my *real estate* (*houses* and landed property,) for the use of one and all his children, male and female, equally; all the income to be applied as he may think best for their education and support, or otherwise, as he may think proper."

2nd. "I also give and bequeath to my son Talbot Jones Taylor all my estate (money, stock, &c.) personal and *mixed,* absolutely."

The question presented is, of course, to be solved by the construction we give to this instrument. By the first resolution in *Rose vs. Bartlett* (*Cro. Car.*, 292,) it was resolved "that if a man *hath* lands *in fee* and lands *for years,* and deviseth all his *lands and tenements,* the fee-simple lands pass only and not the lease for years; and if a man hath a lease for years and *no fee-simple,* and deviseth all his lands and tenements, the lease for years passeth, for otherwise the will should be merely void." Both these propositions continued to be law in England until the first of them was abrogated by the *Statute* 1 *Vict., ch.* 26, *sec.* 26. Before the passage of this Act of Parliament, the Courts in some instances evinced a reluctance to follow the *first of these rules,* but it was nevertheless adopted and applied in a large number of cases and is supported by the decided weight of English judicial authority. Thus in *Thompson vs. Lawley,* 2 *Bos. & Pull.*, 303, there is a very able and elaborate review of all the cases up to that time, by Lord ELDON, C. J., and it was there held by all the Judges that under a general devise of all manors, messuages, lands, tenements and hereditaments, leasehold messuages will not pass unless it appear to have been the evident intention of the devisor that they should pass; and his *Lordship* in concluding his opinion said: "the rule

in *Rose vs. Bartlett* is a rule which has been acknowledged for ages, and upon which I shall act until I am informed by the highest authority that I am no longer to regard it," and CHAMBRE, J., said: "the rule laid down in *Rose vs. Bartlett* is now so fully established, that all the Courts of justice are bound to conform to it; it has been considered as in force from the time of *Charles the First* to the present period, and has been recognized by the highest authority." It was recognized and applied by Lord HARDWICKE, in *Knotsford vs. Gardiner*, 2 *Atk.*, 450, and again in *Chapman vs. Hart*, 1 *Ves. Sen.*, 271. In *Pistol vs. Riccardson*, 1 *H. Bl.*, 26 (*note*,) a testator seized of freehold estates, and also possessed of two farms held by leases for a thousand years, gave, bequeathed and devised all and every his several messuages, lands, tenements and hereditaments, whatever and wheresoever, which he was seized of, *interested in*, or entitled to, to his son for life with remainder over, and gave his *personal estate* to his wife and daughter, and it was held by Lord MANSFIELD, applying the rule, that the two leasehold farms did *not* pass by the former devise.

These authorities suffice to show how firmly this rule was established in the law of England, and as we have in this State no statute that has abrogated it, those decisions are entitled to great weight here. In the case now before us, the testator owned *houses* and *landed property* in fee, as well as houses and lots in which he had but a leasehold interest. The latter were not blended in enjoyment or otherwise with any freehold property, but are wholly separate and distinct. Nor is there any reason founded in the nature of these leasehold interests which should prevent the application of the rule to this will. Leasehold interests though devised under leases for ninety-nine years, renewable forever, and therefore partaking of the nature of perpetual interests, and in their origin designed to be, and capable of being made perpetual, are nevertheless, in

the view of our testamentary and descent laws, personal estate. The widow is not dowable of them, and they devolve upon the personal representative of an intestate, and may be distributed in kind by the Orphans' Court like other personal property. *Williams vs. Holmes*, 9 *Md.*, 289.

But assuming, as we think we must, that the rule adverted to is not an absolute inflexible rule of property, but must yield to an indication of the testator's intent, and therefore, if the will contain evidence that he meant the leaseholds to pass with the freeholds it will be so construed, how stands the case? What evidence of such intent is there here? As was said by Lord KENYON in *Lane vs. Lord Stanhope*, 6 *Term Rep.*, 353, "it is our duty in construing a will to give effect to the devisor's intention as far as we can consistently with the rules of law, not *conjecturing* but expounding his will *from the words used.*" Now the testator makes a distinction between his *real estate* consisting of "houses and landed property," and his *personal* and *mixed estate*. He disposes of the former by the first and of the latter by the second clause of his will. We must take the terms and words he uses and gather his intentions from them. In the first clause the word "houses" united in the parenthesis with "landed property," as included in and descriptive of the real estate he was then devising, is gratified by applying it to the houses he owned in fee. But in the second clause he uses the terms "all my estate personal and mixed," and the words "mixed estate" cannot be gratified unless they are applied to these leaseholds, for he had no other property upon which they could operate. Leaseholds or terms for years in land like mortgages, and in English law next presentations to a church, estates by statute merchant, statute staple, *elegit*, &c., are denominated *chattels real*, and are so called because they are interests issuing out of, or annexed to real estate of which they have one quality,

*viz., immobility* which denominates them real, but want the other, *viz.,* a sufficient legal indeterminate *duration* and this constitutes them *chattels.* 2 *Bl. Com.,* 386. They are otherwise denominated estates less than freehold, and Mr. Stephens observes of them that they are not properly the subjects of property, but rather modifications of property or species of estates in a certain kind of subjects, viz., in things real: when considered indeed in reference to the distinction between real and personal *estate,* they are held to fall under the latter denomination, their incidents being in general the same as those of property in moveables, but as regards the distinction between *things* real and *things* personal they appertain to the division of things *real.* 2 *Steph. Com.,* 65. And it is because they thus partake of the nature and quality of both real and personal property, that they are, in the popular language commonly used in wills, described as "mixed property" or "mixed estates." When a testator employs this language it is this species of property which he must be regarded as *intending* to dispose of thereby. We have therefore no hesitation in deciding that the testator in this case intended these leasehold interests should pass under the second clause of his will and not under the first. The words "money, stock, &c.," parenthetically inserted in this second clause do not, in our opinion, restrict or limit the meaning of the larger terms "all my estate personal and mixed," but appear to have been used and thus inserted merely as imperfect and partial descriptions of the property embraced by the more general and comprehensive language. For these reasons we are clearly of opinion the testator has given and bequeathed all his leasehold property to his son absolutely. That being so, it follows there is no error in the decree appealed from and it must be affirmed.

*Decree affirmed.*

(Decided December 13th, 1877.)

ROBINSON, J., dissented.