RICHARD S. CULBRETH, Administrator c. t. a. vs.
CHARLES W. SMITH and others.

*Conveyance of Leasehold interest—Reservation of Life-
estate—Chattel real.*

A deed conveying the residue of the term of a leasehold estate for
ninety-nine years, renewable forever, is not rendered void by the
reservation of the use and enjoyment of the property to the
grantor during her natural life.

A leasehold interest, though a chattel real, is personal estate, and
subject to the rules governing that species of property save in so
far as they have been modified by express legislation.

The doctrine of the common law, that an estate in land for life is
superior to an estate for years, no matter how long its duration
may be, has no relation to a deed conveying the unexpired
portion of a term of ninety-nine years, renewable forever, and
reserving to the grantor the use and enjoyment of the property
during her natural life.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of
the Circuit Court of Baltimore City, (DENNIS, J.,) sus-
taining the demurrer of the appellee Smith, to the bill
of complaint, and dismissing the bill. The case is
stated in the opinion of this Court.

The cause was argued before MILLER, IRVING, BRYAN,
and McSHERRY, J.

*Richard S. Culbreth,* for the appellant.

*D. K. Este Fisher,* and *William A. Fisher,* for the ap-
pellees.

McSHERRY, J., delivered the opinion of the Court.

Susan Coburn who owned a leasehold estate for the
unexpired portion of a term of ninety-nine years re-

Culbreth, Adm'r *vs.* Smith, *et al.*

newable forever, executed a deed granting and assigning that estate to her grand-nephew, James Coburn Smith, and her grand-son, John Gerard Coburn, "subject to the reservations and conditions hereinafter," in the deed, "expressed." The deed after describing the property, proceeds, "reserving, however, to said Susan Coburn the use and enjoyment of the said property for and during the term of her natural life, so that she may have, hold, use, occupy and enjoy the same and collect and apply the rents, issues and profits thereof as fully and completely as though these presents had not been executed, and from and immediately after the death of said Susan Coburn, then to have and to hold the same, * * * unto the said James Coburn Smith and John Gerard Coburn, in the manner following, that is to say, * * * * as to one undivided moiety or half part thereof to the said James Coburn Smith, his personal representatives and assigns, and as to the other moiety to the said John Gerard Coburn, for and during the term of his natural life, and after his death then to his children and descendants *per stirpes;* but should he die without issue and leaving said Susan Knight surviving him then to said Susan Knight for and during the term of her natural life, * * * * and after the death of said Susan Knight, or upon the death of the said John Gerard Coburn, should he survive her and die without issue, then to the children and descendants, other than said James Coburn Smith, of William Smith, nephew of said Susan Coburn, *per stirpes."* She subsequently made a will wherein she named the said John Gerard Coburn residuary devisee and legatee. Shortly thereafter she and the said James Coburn Smith executed a deed to John Gerard Coburn, conveying to him the moiety of said leasehold estate, granted to Smith in the first mentioned deed, and declaring that this conveyance of said moiety was "sub-

ject to a life estate therein of said Susan Coburn and to the limitations and conditions set forth in" the first named deed, and "also to the remainder and remainders therein provided, and in all respects in the same manner and upon the same terms as though both moieties of said property had passed to said John G. Coburn in and by the deed aforesaid." Susan Coburn died in eighteen hundred and eighty-two. John Gerard Coburn died in eighteen hundred and eighty-seven without ever having had any issue. Susan Knight died after the bill of complaint was filed in this cause, and now the children of William Smith, other than James Coburn Smith, claim the leasehold estate under the limitations to them in the deeds we have quoted from. The appellant, who is the administrator *c. t. a.* of the estate of John Gerard Coburn, filed a bill in the Circuit Court of Baltimore City insisting that these deeds are void; that they did not convey the term out of Susan Coburn, and that, consequently, that property passed under the residuary clause of her will to John Gerard Coburn and belongs to his personal representatives. The ground upon which this claim is founded is thus stated in the bill of complaint, viz., "Your orator is advised that no interest passed from the said Susan Coburn by said deeds, because said deeds are void, it being apparent that she did not mean to part with her interest in the term during her own life, and her life interest being deemed in law of greater value and longer duration than any term of years; so that the interest of the said Susan Coburn in said property was the same after the execution of said deeds as before, and she was possessed of the same interest in the same manner at the time of her death." Some of the defendants answered the bill, one demurred and one pleaded to the jurisdiction of the Court. The Circuit Court upon hearing dismissed the bill, and hence this appeal.

Culbreth, Adm'r *vs.* Smith, *et al.*

It is obvious that this claim of the appellant is based upon the narrowest technical grounds, and rests solely upon the assumption that the reservation of a life estate by deed in a chattel real defeats every limitation in remainder.   The particular regard which the common law showed to the tenant of a freehold and the preference given to him above a tenant for years, depended upon feudal principles which have no application to the condition of society under our form of government.   In feudal times this estate was, perhaps, more valuable and permanent than an estate for years, as long terms were then unknown; or more honorable, as a proof of military tenure, which embraced privileges only allowed to tenants of the king who took the oath of fealty—an oath which was never permitted to be· taken by any whose estate was less than for life.   1 *Taylor Land. & Ten.*, (*8th Ed.*), *sec.* 14, *note.*   But this undoubted doctrine of the common law that an estate in land for life is superior to an estate for years, no matter how long its duration may be, has no relation whatever to a case like this; and any attempt to apply ·it here would lead to the most erroneous and anomalous results, as a brief consideration will clearly demonstrate.   A leasehold has always been considered personal estate, subject to all the rules governing that species of property, save in so far as those rules have been modified by express legislation.   *Arthur vs. Cole*, 56 *Md.*, 107; *Taylor vs. Taylor*, 47 *Md.*, 295.   *Blackstone* in his *Commentaries*, (*book* 2, *ch.* 9, *side page*, 144.) observes that "because no livery of seisin is necessary to a lease for years such lessee is not said to be *seised*, or to have true legal seisin of the lands.   Nor indeed does the bare lease vest any estate in the lessee ; but only gives him a right of entry on the tenement, which right is called his *interest in the term*, or *interesse termini;* but when he has actually so entered, and thereby

accepted the grant, the estate is then, and not before, vested in him, and he is *possessed, not properly of the land,* but of the term of years; the possession or seisin of the *land* remaining still in him who hath the *freehold.*" The reversionary freehold estate is subject exclusively to the law that governs real property, whilst the leasehold estate is mainly controlled by the law that governs personalty—the one estate passing by descent, and being subject to the law of partition among heirs, while the other is the subject of administration, and is governed by the law that directs distribution of the personal estate. *Myers, et al. vs. Silljacks,* 58 *Md.,* 330. It is apparent, therefore, that the estate held by Susan Coburn *before* she executed the deeds to John G. Coburn, was merely personal property, because only an interest in the residue of a term of years renewable forever. But she conveyed this personal property to John G. Coburn for his life with remainders over, reserving to herself a life estate therein. This reservation being for her life converted, it is insisted, a purely personal estate into a freehold; and changed what was only an interest in a *term* into a freehold interest in *land.* Thus by her own act, if this be true, she enlarged her estate from personal to real, and by force of the reservation vested in herself an estate of a quality and character totally different from and superior to the one she, in fact, originally possessed. This she certainly could not do, because a life estate in personal property can never, from the nature of the thing, become a freehold estate—can never become *real* estate. The anomaly becomes more striking if we suppose the case of a conveyance of a leasehold estate for life to one grantee and for the residue of the term to another. The grantor, having but an interest in the term conveys *that* interest to one *for life,* who thereupon takes at once, not what the grantor could confer, but a free-

hold—an estate in the land—which the grantor not only never had or possessed and consequently could not convey, but which, in fact, belonged to another person, the lessor. The result would be that the grantee would succeed to an estate greater than that which his grantor enjoyed. As no one can grant that which he does not have, it is difficult to perceive how the owner of a chattel-real can possibly, by any form of conveyance or by any act of his own, enlarge that chattel into a freehold estate, either in himself or in his alienee.

Whatever may have been the doctrine asserted in some very old cases on this subject, the strong tendency of the Courts has been to discard such subtle and artificial rules; and even sometimes to invent the most refined distinctions to accomplish that end. The case of *Wright vs. Cartwright,* 1 *Burr.,* 282, differing from this case rather in form than in substance, not only illustrates this but sustains our conclusions here that these deeds are perfectly valid. The facts of that case were these: Edmund Plowden, being seized in fee, demised on the fifth of October, 1676, by deed, (viz., by indenture of lease between him and Elizabeth Cartwright,) to the said Elizabeth Cartwright for ninety-nine years, if she should so long live; and after her death, if she happen to die within the said term, the remainder thereof to Rowland Cartwright her oldest son, for and during the residue of the said term, yielding and paying, &c. Elizabeth entered and was possessed. She died in 1694, whereupon Rowland entered and was possessed till he died in 1753. The lessor of the plaintiff was heir-at-law to Edmund Plowden, the lessor. The defendant was the personal representative of Rowland Cartwright. The question was whether the term existed; that is, whether it continued *beyond* the life of Elizabeth Cartwright. Lord MANSFIELD in the course of his opinion said: "The

old cases held 'that there could be no remainder or substitution of a term after an estate for life, by *deed* or *will.*' It was a mere possibility. It was void, from the uncertainty of commencement. There was no particular estate. The gift of a term (like any other chattel) for an hour was good *for ever.* *The objections were subtle and artificial.* When long and beneficial terms came into use, the convenience of families required that they might be settled upon a child, after the death of a parent. Such limitations were soon allowed to be created by will: and the old objections were removed, by changing the name from remainders to executory devises. The same reason required that such limitations might be created by *deed:* as, for instance, marriage-settlements, to answer the agreement of parties, and exigencies of families. Therefore, to get out of the literal authority of old cases, an ingenious distinction was invented: a remainder might be limited for the residue of the *years,* but not for the residue of the *term.* * * * * Limitations of terms are *now* of general use. Their bounds are settled. The rules concerning them are certain and established. When they came to be allowed by will, or by declaration of trust, the *substantial reason* was the same for allowing them by *deed.* A strained construction should not be made to overturn the lawful intent of the parties. It was *lawful* to secure this lease for the benefit of the mother during her life, and afterwards by way of provision for her son. All the parties undoubtedly *intended it.*" It is clear that had Susan Coburn made the same disposition by will, which she did by these deeds, it would now be held valid and effective, even though the same early cases invoked here to defeat these deeds equally decided against any such limitation by will. But, as stated by Lord MANS-FIELD, the literal authority of these cases was avoided

by ingenious distinctions and by merely changing the name of a remainder and calling it an executory devise.    And when these remainders "came to be allowed by will or by declaration of trust, the *substantial reason* was the same for allowing them by *deed.*" By the ancient common law there could be no future property, to take place in expectancy, created in goods and chattels; yet in last wills and testaments such limitations of personal goods and chattels in remainder, after a bequest for life, were permitted; though originally that indulgence was only shown when merely the *use* of the goods, and not the goods themselves, was given to the first legatee.    But long before Sir Wm. Blackstone wrote his *Commentaries* that distinction was disregarded, and therefore, if a man, either by *deed* or will, limited his books or furniture to A for life with remainder over to B, this remainder was good, unless, indeed, the property was such that its use was its consumption.    *Black. Com., book 2, page* 398; 1 *Broom & Hadley's Commentaries, side page* 593; 2 *Kent's Com., side page* 352.    In *Clarges vs. Albemarle,* 2 *Vern.,* 245, (1691,) and *Hyde vs. Parrat,* 1 *P. Wms.,* 1, this distinction between a gift of the personal chattel itself to one for life, remainder to another, and the gift of the use thereof to one for life with remainder over, was exploded; and it was held that it amounted to the same thing whether the gift was the one way or the other; for the testator's intention appeared to be the same in both cases, and ought equally in both cases to prevail.    *Westcott vs. Cady,* 5 *Johns. Ch.,* 334. In *Langworthy vs. Chadwick,* 13 *Conn.,* 42, it was held that a remainder in personal chattels, dependent on an estate for life, may be created by *grant* or devise, and the interest so created will be protected in chancery.    In *Hope vs. Hutchins,* 9 *Gill & J.,* 77, the donor of personal property reserved in the deed of gift the

use of the property during her life, and it was held to be valid. Now, a leasehold interest, though it be a chattel real, is still personal estate, and there is no substantial reason why this particular species of personal property should be excluded from the operation of the rule just stated and now recognized as governing personal property generally. We know of no principle which will, or ought to, prevent the application to leasehold estates of the settled doctrine which sustains the creation *by deed* of a life estate in personal chattels with a remainder over. And we hold that this may be done whether the property be given for life with remainder over, or whether the property be given and a mere use for the donor's benefit during life be reserved—there being, as stated in *Westcott vs. Cady, supra,* no substantial difference between these two modes of doing the same thing.

But there is another reason why the very old cases spoken of by Lord MANSFIELD should not be followed in this State, and it is this: Leases with covenants for perpetual renewal were never generally used in England. Lord Chancellor LIFFORD, in *Boyle vs. Lysaght, Vernon & Scriven,* 135, quoted by this Court in *Banks vs. Haskie,* 45 *Md.,* 223, expressly stated that this kind of tenure was not known in England; "they had" he said "no such tenures there." Originally in that country leases were created for very limited periods, not exceeding forty years, though as early as the reign of Edward III. longer fixed terms were in use; but these latter terms were not extensively introduced until after the adoption of the Statute of 21 Henry VIII. ch. 15. *Black. Com., book* 3, *side page* 142. Nearly all of these leases were for fixed and limited terms. On the other hand, in Ireland leases for a definite term renewable forever were in almost universal use. "This character of tenure is, so far as we know among the

States, peculiar to Maryland. It was introduced here
in colonial times, and has been a favorite system of
tenure from a very early period." *Banks vs. Haskie,*
*supra.* It is co-extensive with the fee itself in dura-
tion, and though personal estate, it can only be con-
veyed as real estate is. *Bratt vs. Bratt's Adm'x,* 21
*Md.,* 583. This form of tenure being so wholly unlike
that which prevailed in England, it would be unwise
and highly impolitic, even if we had the power, to
strike down these and all similar leases by rigidly
bringing them, in this State, within the scope of a
rule of the ancient common law never heretofore ap-
plied to them. We are not required by any provision
of the organic law of the State to adopt such a rule
here, and to subject to its operation and control a
species of tenures unknown to the common law, but
borrowed by the early settlers of the colony from a
different system of jurisprudence. A long established
and well understood usage has sanctioned such con-
veyances, and a departure from it now would unsettle
and probably overthrow many titles hitherto believed
to be perfectly good.

No question has ever been heretofore raised in this
Court in respect to the right to convey by deed such
terms for life with remainders and limitations over.
Doubtless many titles involving vast amounts of money
are now held under just such leases as these. Cases
have been before this Court involving the construc-
tion of leases of this character, but the point now
raised against their validity was not even suggested,
though in at least one of these cases such an objec-
tion, if made and sustained, would have been decisive
against the remainders. *Winter, Guardian vs. Gor-*
*such, et al.,* 51 *Md.,* 180, where the Court held the lim-
itation over after a life estate void, not because such
a limitation could not be lawfully made by deed but,

because the premises of the deed granted the whole term, and the *habendum* which restricted the grant to a life estate and created the remainder, could not be allowed to abridge or cut down the estate given by the premises. Had it been supposed that the deed was void, because repugnant to the common law, no doubt the point would have been made and passed upon. See also *Arthur vs. Cole,* 56 *Md.,* 107.

The learned Judge of the Circuit Court based his decree upon the construction which he placed on Art. 44, Revised Code of 1878; and he concluded that the doctrine contended for by the appellant as the doctrine of the common law, had been abrogated by this legislation. We concur with his reasoning on this point and would be content, to rest our affirmance of his decree thereon, if the other considerations assigned by us were not also amply sufficient. The decree appealed from will be affirmed.

*Decree affirmed.*

(Decided 23rd November, 1888.)