**JONES et al. v. MAGRUDER, Collector of Internal Revenue.**

**Civil Action No. 1138.**

District Court, D. Maryland.

Dec. 19, 1941.

H. H. Walker Lewis, of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The question to be decided in this case is whether a deed of a leasehold interest, for ninety-nine years renewable forever, in Maryland lands requires a federal tax stamp under the Revenue Act of 1932, § 725, 26 U.S.C.A. Int.Rev.Acts, page 635, now codified in 26 U.S.C.A. Internal Revenue Code, § 3482, which reads as follows:

"8. Conveyances: Deed, instrument, or writing, delivered on or after the 15th day after the date of the enactment of the Revenue Act of 1932 and before July 1, 1934 (unless deposited in escrow before April 1, 1932), whereby any *lands, tenements, or other realty* sold shall be granted, *assigned,* transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $100 and does not exceed $500, 50 cents; and for each additional $500 or fractional part thereof, 50 cents. This subdivision shall not apply to any instrument or writing given to secure a debt." (Italics supplied)

In connection therewith there must also be considered Article 84a of Treasury Regulations 71, revised in July 1932, which provides in part as follows: "What constitutes 'lands, tenements or other realty' is determinable by the law of the State in which the property is situated;" and also Art. 108 of Treasury Regulations 71, which provides: "Leases of real property are not subject to the tax."

Section 725 of the Revenue Act of 1932 is an addition to the Act of February 26, 1926, c. 27, Schedule A 8, 26 U.S.C.A. Int. Rev.Acts, page 297, and similar wording of the Stamp Taxing Act has been carried forward in subsequent revenue acts.[1]

The facts are few and simple, and have been stipulated. On September 28, 1936, the taxpayers, by deed of assignment, duly recorded, conveyed the leasehold interest in certain lots of ground in Baltimore City, subject to the payment of an annual ground rent of $22.50, to the Allied Mortgage Companies, Inc., as purchaser, for a consideration of $7900. The annual ground rent of $22.50 was created by an indenture of lease duly recorded, dated November 4, 1850, from Henry Patterson and wife to one

[1] See Act of June 16, 1933, c. 90, § 212, 48 Stat. 206; June 28, 1935, c. 333, 49 Stat. 431, June 29, 1937, c. 402, 50 Stat. 358, June 29, 1939, c. 247, § 1, 53 Stat. 862, 26 U.S.C.A.Int.Rev.Code, § 3482. And a number of revenue acts prior to 1926 also contained similar wording with respect to stamp taxes on certain conveyances. A stamp tax on conveyances of realty was also imposed in substantially the present form by c. 331 of the Acts of 1914, 38 Stat. 762, and was in force from Dec. 1, 1914 to Dec. 31, 1915; and a similar tax was reimposed during the period from Dec. 1, 1917 to March 28, 1926. See Rev.Act of 1917, 40 Stat. 323; Rev.Act of 1918, 40 Stat. 1137; Rev.Act of 1921, 42 Stat. 305; Rev.Act of 1924, 43 Stat. 335. The tax was repealed effective Mar. 28, 1926 by the Rev.Act of 1926, 44 Stat. 126, 26 U.S.C.A.Int.Rev.Acts, page 33, and there was no further stamp tax on conveyances until June 21, 1932. Similar regulations to the effect above quoted in the text were in effect with regard to the prior Acts.

John C. Sulznar. Copies of the deed of assignment of the leasehold, and of the original lease are annexed to the complaint in this case. The original lease made by Patterson to Sulznar (whose leasehold interest by mesne conveyance has now become vested in the Allied Mortgage Companies, Inc.,) is in the usual form of a ninety-nine year lease, renewable forever, which has long been customary in Baltimore City and in some other parts of the State of Maryland, and is known generally as a "ground rent" lease. The leasehold interests thus created are in Maryland *personal property and not realty;* but nevertheless the position of the Collector of Internal Revenue for this district has been commonly stated to be that deeds of assignment of such leasehold property are subject to the Federal Stamp Tax Act here involved, and in practice stamps have commonly been affixed to such conveyances. The taxpayers affixed stamps of the par value of $8.00 to the deed of assignment at the time of the execution and recording thereof, and, after due administrative procedure, have now sued to recover the amount paid for the stamps with interest. While the amount involved in the present case is only a few dollars, the present suit is obviously a test case because much of the property in Baltimore City is held under ninety-nine year leases renewable forever, the conveyance of which if subject to the stamp tax probably involves many thousands of dollars of stamp taxes annually.

"Ground rent" leases of the kind now in question were frequent in Maryland during the Colonial period (dating from about 1750). Their use was infrequent in England but they were widely known and used in Ireland,[2] in substantially the form prevailing in Maryland. It is believed they are not generally known or used in other States. The history of their origin and development in this State is extensively reviewed by the Court of Appeals of Maryland in the cases of Banks v. Haskie, 45 Md. 207, and Culbreth v. Smith, 69 Md. 450, 16 A. 112, 1 L.R.A. 538.[3]

▇ The chief characteristics of the Maryland ground rent leases are (1) the owner of the land in fee leases it to the

named lessee for the period of ninety-nine years, (2) with covenant for renewal from time to time forever, upon payment of a small renewal fine (3) upon the condition, however, of the payment of a certain sum of money (usually payable semi-annually) and (4) upon the further condition that if the payment of the rent is in default for a stipulated time the lessor may reenter and avoid the lease. The grantee also covenants to pay all taxes upon the whole property; and under our present taxing system the taxes are assessed to the lessee.

The original lease in this case from Patterson to Sulznar is in the customary form. It will be noted that the lessor leases to Sulznar "his executors, administrators and assigns" (not his heirs), but the annual rent is to be paid to Patterson "his heirs or assigns". The covenant for renewal is as follows:

"Patterson, his heirs or assigns, at any time or times hereafter during the continuance of this demise at the request and proper cost and charge in the law of the said John C. Sulznar, his executors, administrators or assigns, and at his or their paying or tendering in payment as a fine therefor to the said Henry Patterson, his heirs or assigns, the sum of $5.00 lawful money shall and will make, execute, acknowledge and deliver or cause and procure to be made, executed, acknowledged and delivered to the said John C. Sulznar, his executors, administrators or assigns, a new lease for the above described and hereby demised ground and premises for other 99 years to commence and take effect from and at the end of the term for which the same are hereby demised subject to the same rent and under the like covenants, clauses and agreements as are herein before contained so that this present demise may be renewable and renewed from time to time forever."

▇ The legal incidents and characteristics of the ground rent lease are well known to all Maryland lawyers and judges, and have been firmly established for a very long period of years. The estate of the lessee has been uniformly regarded as personal property and upon his death intestate constitutes a part of his personal estate and

---

[2] See Boyle v. Lysaght, Vernon & Scriven, 135, 143.

[3] It has recently been even more extensively reviewed in two articles in the Maryland Law Review. See Vol. III, 314—Taxation of Maryland Ground Rents by H. H. Walker Lewis; and Vol. V, 1—The Maryland Ground Rent, by Frank A. Kaufman. The now classic treatise on ground rents in Maryland is by Mayer (1883).

passes, subject to the payment of debts, to his next of kin and does not descend to his heirs at law. His wife· or widow has no inchoate or consummate dower in the leasehold estate; which may be bequeathed by will executed in form sufficient for the passage of personal property as distinct from real estate. There are numerous Maryland cases expressly so holding. Taylor v. Taylor, 47 Md. 295; Arthur v. Cole, 56 Md. 100, 107, 40 Am.Rep. 409; Banks v. Haskie, 45 Md. 207; Culbreth v. Smith, 69 Md. 450, 16 A. 112, 1 L.R.A. 538; Holzman v. Wager, 114 Md. 322, 7 A. 205, Ann.Cas. 1912A, 619; Devecmon v. Devecmon, 43 Md. 335, 347; Craig v. Craig, 140 Md. 322, 117 A. 756. If the lessor refuses to comply with the covenant for renewal the lessee is entitled to maintain a bill for specific performance, unless he was guilty of gross laches in applying therefor. Banks v. Haskie, 45 Md. 207. The right to *renewal* is now expressly incorporated by statute in Maryland Code 1939, Art. 21, §§ 112, 113. Prior to 1884, the ground rents reserved by such leases were not *redeemable* by the lessee unless expressly so stipulated in the original lease; but in that year and by succeeding statutes provision was made for the terms and conditions on which the lessee in subsequently made leases should have the right to redeem the rent and thus become the owner of the property in fee. See Md. Code, Art. 21, §§ 110, 111, 115. The creation of the original lease, and deeds for the reversionary interest therein, and assignments of the leasehold interest must be executed, acknowledged and recorded as deeds. Md.Code, 1939, Art. 21, § 1. The leasehold estate is subject to the lien of a general judgment against the lessee. See Md.Code, 1939, Art. 26, § 20. For purposes of definition in the general taxation scheme of the State, real property is defined as including leaseholds. See Md.Code, 1939, Art. 81, § 1(12), and § 3(c), as amended by c. 912, § 3(c) of the Laws of 1941. In practical economic effect the relation of the lessee to the property is that of an owner of land and improvements thereon subject to the payment of the annual rent and taxes on the property; and his economic relation to the owner of the ground rent is much like that of a mortgagor paying interest on a debt where the principal never matures so long as the mortgagor pays the interest and taxes. The technical relation between the owner of the rent and of the leasehold is that of landlord and tenant, and the rent is classed as a rent service, and not a rent charge, and the owner of the rent has the right of distress for collection. Ehrman v. Mayer, 57 Md. 612, 621. Conveyances by the lessor of his reversionary interest are, of course, conveyances of realty, and it is not doubted that they are subject to the federal stamp tax act.

The only other State in which the ground rent system has been extensively used is Pennsylvania,[4] but there it is based on technically different legal principles. See Treasury Decisions, Sales Tax Rulings, Bulletin No. ST-1-20, p. 113. The typical Pennsylvania ground rent is not created by a lease at all but results from a conveyance by the absolute owner of the land to the grantee in fee, subject to the payment of the rent. The difference between the Maryland and Pennsylvania ground rent systems is said to be attributable to the somewhat different provisions of the respective royal charters to Cecilius Calvert and William Penn for the proprietary provinces of Maryland and Pennsylvania, with respect to the application of the statute of *Quia Emptores* [18 Edw. 1, c. 1, 3, (1290)]. This English statute was designed to prevent the disadvantageous effects of sub-infeudation to the overlord. The statute provided that when the feudal holder of the land aliened it his grantee should nevertheless hold directly from the overlord, so that the rights of the latter with respect to escheat and other incidents of the feudal tenure should not be defeated. Feudal tenants avoided the statute by the device of long leases which were not considered an alienation of the estate. In the Maryland charter there was an exemption (the *non obstante* clause) from the provision of *Quia Emptores* so far as grants from the Lord Proprietary to his immediate tenants were concerned. But in the charter to Penn this exemption was more broadly stated, with the result that the Supreme Court of Pennsylvania in an early case (Ingersoll v. Sergeant, 1 Whart. 337–352). held that the statute of *Quia Emptores* was not in force in Pennsylvania. The result of this difference between the

---

[4] This does not mean that long leases of lands, under varying forms, are entirely unknown in other jurisdictions. Cadwalader on Ground Rents (Pa.1879) pp. 101–112; 28 C.J. 839, 840; Bingham & Andrews, Financing Real Estate (1924) c. 20; Land Trusts as a Method of Finance, 1939, 52 Harvard Law Review, 1149; 5 Md. Law Rev. p. 72, note 185.

charters was that long leases were made in Maryland by the tenants of the Proprietary, but in Pennsylvania alienation of the land by the tenants by deed in fee subject to reserved rents was considered permissible. It results in Pennsylvania that both the owner of the ground rent and of the granted estate hold estates of inheritance in fee simple. Irwin v. Bank, 1 Barr, Pa., 349. See Ground Rents in Maryland by Mayer (1883); Cadwalader on Ground Rents (Penna.1879).

The dominant inquiry in the question now presented is, what did Congress intend to include in the phraseology of "deed, instrument, or writing, * * * whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed." In Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585, the opinion of Mr. Justice Roberts for the court said: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." In that case the court construed and applied the phrase "general power of appointment" as contained in sec. 302(f) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 230, (estate tax) in accordance with the general understanding of the legal phrase, not controlled by the decision in the particular State where the question arose. The court also in that case gave much weight, in interpreting the meaning of a general power of appointment, to the Treasury Regulations existing during several reenactments of the particular taxing statute. See, also, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, and United States v. Pelzer, 312 U.S. 399, at page 402, 61 S. Ct. 659, at page 661, 85 L.Ed. 913, where it was said: "But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed.

199; Morgan v. Commissioner, 309 U.S. 78, 81, 60 S.Ct. 424, 426, 84 L.Ed. 585."

The crucial question is thus seen to be whether the statutory phraseology is sufficiently general and definite to be susceptible of a uniform nationwide application, or whether the nature of the subject matter is such that there arises a necessary implication that its application must be dependent on the State law. The taxpayers contend the latter furnishes the rule to be applied in this case. They rely principally on the regulations above quoted. Their argument runs as follows: (1) The words of the statute (lands, tenements or other realty) are technical common law words used to distinguish realty from personalty; (2) these technical words are applied with different results in different States by reason of particular statutory provisions or court decisions, and (3) local law thus applying, it is clearly established by Maryland law that leases for 99 years renewable forever constitute personal and not real estate and are therefore not within the statutory phrase "lands, tenements or other realty". If the premise that the words must be taken in their technical common law sense and so applied locally is correct, then the conclusion is plausible and logical and especially attractive to Maryland lawyers and judges who have long been familiar with the local decisions that such leasehold estates are personal and not real property.

It is true that technical common law words when used in a statute without definition will generally be construed in that sense unless a contrary intention appears from the context. 2 Sutherland on Statutory Construction, 2d ed. s. 398, p. 757; Moore v. United States, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422; Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216. It is also true that the general import of the statutory phrase is to include conveyances of real property as distinct from personal property. And tested by the technical and some times highly artificial rules of the common law of real estate, originating in the system of feudal tenure, the phrase "lands, tenements or other realty" probably would not when strictly applied, include a purely leasehold estate no matter of how long duration, as such an estate would be considered personal property and devolve not on the heir but on the personal representatives of a deceased owner. 2 Kent's Com. 342; Devecmon v. Devecmon, 43 Md. 335; Holzman v. Wager, 114 Md. 322, 79

A. 205, Ann.Cas.1912A, 619; Taylor v. Taylor, 47 Md. 295; Orchard v. Wright-Dalton-Bell-Anchor Store Co., 1910, 225 Mo. 414, 125 S.W. 486, 20 Ann.Cas. 1072; Mayor of New York v. Mabie, 13 N.Y. 151, 64 Am.Dec. 538, 542, 543; 1 Woerner's Am. Law of Administration, 590, 593; Pistol v. Richardson, 1 H.Bl. 26, note; A.L.I. Restatement, Property, s. 8.

The word "tenements", a highly technical term of the common law, has some uncertainty of meaning, but the better view would seem to be that it would not include estates for years. Challis on Real Property, 3d ed. 1911, pp. 43–48; 1 Tiffany on Real Property, (1920) s. 5. Cf. Pollack & Maitland, History of English Law, Vol. 2 (1895) note, p. 117. The inclusive phrase generally used to designate an owner's whole "bundle of rights" in land was "lands, tenements and hereditaments". In Maryland this phrase has been held not to include leasehold interests for 99 years renewable forever. Devecmon v. Devecmon, supra; Taylor v. Taylor, supra.

■ It is, however, not probable that Congress intended in this modern taxing act to use the phrase "lands, tenements, or other realty" in the technical nicety of the common law with respect to interests in lands flowing from a system of feudal tenure which did not exist in this country after the American Revolution. I have been unable to find any legislative history of the statute which throws any light upon the sense in which the words were used; but after considerable reflection I have reached the conclusion that the expression is sufficiently general but nevertheless definite to have a uniform nationwide application. If we put aside the technical niceties of meaning of the word "tenements", we nevertheless have in the words "lands, or other realty", an expression which is commonly understood nationwide. Indeed one of the dictionary meanings (see Webster's New International Dictionary) of the word "land" includes "an interest or estate in lands". It is a reasonable construction of the statutory words to include therein a conveyance of an interest or estate in land constituting a substantial ownership in whole or in part, as distinguished from a mere license or temporary right of possession such as pertains to an ordinary lease.

Probably in no State of the United States other than Maryland would a deed for a leasehold estate for 99 years *renewable forever* not be considered a conveyance of

land or realty at this time. And if the statute is susceptible of general uniform application, we must apply it without deference to the particularity of the Maryland view of the nature of the estate. The economic characteristics of this estate in Maryland are practically the same as those of its counterpart in Pennsylvania where the grantee of the land subject to the rent is an owner in fee. In substance the lessee of a Maryland 99-year leasehold estate, renewable forever, is the owner of the land subject to the payment of the rent. See Baltimore v. Bouldin, 23 Md. 328, 373. In this connection it is to be noted that quite a little fee simple property in Baltimore City has been deliberately made subject to a ground rent of one cent only for the express purpose of making it personal property and not realty, to defeat the dower of a future wife, or for other reasons applicable to personal property as distinct from realty. I do not suggest that the Maryland rule classing the estate as personal property is a departure from or out of harmony with the logical application of the common law, but, as has been previously pointed out, it is due to the special legal technique for the creation of the leasehold estate resulting from the provision of the Maryland charter relating to the statute *Quia Emptores*.

It is also to be noted that these leasehold estates both at common law and in Maryland are termed "chattels real"; and even in Maryland they are some times called "mixed" property or mixed estates because they have some characteristics of real as well as personal property. Taylor v. Taylor, 47 Md. 295, 300. The element of the right to *perpetual renewal*, fortified by Maryland statutes to enforce the right, with the further statutory right of *redemption* affecting leasehold interests created after 1884, cannot well be ignored in considering the aspect of substantial ownership in the land existing in favor of the so-called "lessee". The rights of the "lessee" are certainly very different from those of an ordinary tenant who, of course, does not have ownership of the land in any sense, but only a temporary right of occupation. Apparently the Maryland Legislature thought these leasehold estates were subject to the federal stamp tax. See Md.Code, Art. 21, § 116.

There have been but a few judicial decisions construing and applying the federal statute here involved. In Milwaukee Land Co. v. Poe, 9 Cir., 31 F.2d 733, 734, it was held that a conveyance of standing timber

in the States of Washington and Idaho required the stamps under the revenue acts of 1918, 1921 and 1924. The court considered the applicable regulations which made the decision determinable by the law of the State in which the property is situated, and which further provided "standing timber is ordinarily held to be real estate, and where so held the deed transferring it is subject to the tax." The court found no Idaho decision as to whether the conveyances should be regarded as a conveyance of real estate, but that the weight of authority was to the effect that it was, and the majority of the court thought that a particular Washington State decision was also to that effect. The conveyance was therefore held subject to the tax. In Morrow v. Scofield, 5 Cir., 116 F.2d 17, it was held that a conveyance by assignment of oil and gas leases in Texas under the 1932 Act required the stamps. The conclusion was said to be in accord with the Texas decisions, but in the opinion the view was expressed that the statute should have a uniform nationwide application irrespective of the particular State law. The regulation literally to the contrary effect was considered as a "mere rule of thumb" provision for working out the application of the statute.

 I take a somewhat different view of the effect of the regulation. The Revenue Act of 1932 was approved June 6, 1932, and became effective as to the stamp tax on conveyances on June 21, 1932. Regulation 71, Arts. 84 and 108 were approved by the Secretary of the Treasury on July 16, 1932, pursuant to the authority of § 1101 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev. Acts, page 315; and the Regulations long remained unchanged during the successive reenactments of the stamp tax provisions in subsequent taxing acts. Similar regulations were applicable to the same wording of the stamp revenue acts of 1918, 1921 and 1924.[5] Particular weight would seem to be attributable to these regulations in view of the fact that they were practically contemporaneous with the statute itself and have been long continued. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52;

Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; Morgan v. Commissioner, 309 U.S. 78, 81, 60 S.Ct. 424, 84 L.Ed. 585; United Pocahontas Coal Co. v. United States, 4 Cir., 117 F.2d 175; Griswold, A Summary of the Regulations Problem, 54 Harvard Law Review, 398; Postscriptum, 1941, 54 Harvard Law.Rev. 1323.

In this case it is contended for the Collector that these regulations should be disregarded because they are said to be inconsistent with the statute itself in view of the recent cases of Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; United States v. Pelzer, 312 U. S. 399, 61 S.Ct. 659, 85 L.Ed. 913. Counsel point out that in the revised edition of Regulations 71 approved November 25, 1941, reference to the applicable State law is eliminated and the wording with respect to leases has been changed now to read as follows: "Sec. 113.84. Conveyances not subject to tax: (i) Ordinary leases of real estate for a definite term of years." It is doubtful indeed if the revised Regulations can properly be given any retroactive effect in this case.[6] Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. Cf. Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101.

But while the Regulations relied on in this case by the taxpayers should not be lightly regarded, I think they must be considered and applied in subordination to the proper construction of the statute itself. Regulations 71, Art. 108 that "leases of real estate are not subject to the tax" should fairly be construed as referring to only ordinary leases of real property. And in applying Art. 84(a) that "what constitutes land, tenements or other realty is determinable by the law of the State in which the property is situated," we must bear in mind that the tax is imposed not on the *subject matter* of lands, tenements or other realty but on the *conveyance* thereof by deed or other written instrument. The conveyancing laws of the separate States are well

---

[5] See Regulations 40, Arts. 76 & 100; Reg. 55, Arts. 63 & 87; Reg. 55 (1924 ed.) Arts. 29 and 53.

[6] Revenue Act of 1926, § 1108(a), as amended by § 605 of the Rev.Act of 1928, 26 U.S.C.A.Int.Rev.Acts, page 319, contains the following special provision: "A. In case a regulation or Treasury decision relating to the internal-revenue laws is amended by a subsequent regulation or Treasury decision, made by the Secretary or by the Commissioner with the approval of the Secretary, such subsequent regulation or Treasury decision may, with the approval of the Secretary, be applied without retroactive effect." See 26 U.S. C.A.Int.Rev.Code, § 3791(b).

known to be varied, and therefore necessarily reference must be made to the local law to determine its provisions with respect to the conveyances of lands, tenements or other realty. In Maryland we have seen that deeds of assignment of these leasehold estates must be by instrument acknowledged and recorded as deeds for fee simple interests, Md.Code, 1939, Art. 21, § 1. Reference must also be made to the local law to determine whether a particular deed or writing does convey lands, tenements or other realty in the sense of transferring *interests of ownership* therein as distinct from a mere license or temporary right of occupation by a tenant. The real point of the decision in the cases just referred to (Milwaukee Land Co. v. Poe and Morrow v. Scofield) was whether the conveyances in question transferred ownership interests as distinct from mere licenses. Reference to the local law is necessary to determine such questions. For instance, in Maryland, it has been held that a sale of standing timber is not a conveyance of an interest in land but a mere license to enter on the land to cut the timber. Smith v. Bryan, 5 Md. 141, 151, 59 Am.Dec. 104; Sentman v. Gamble, 69 Md. 293, 297, 13 A. 58, 14 A. 673.

The conclusion of law is that the conveyance involved in this case required the stamp tax and therefore the taxpayers are not entitled to recover. The clerk will enter judgment for the defendant with taxable court costs.