## RAILROAD FEDERAL SAVINGS & LOAN ASS'N v. UNITED STATES.

### No. 173.

Circuit Court of Appeals, Second Circuit.
April 15, 1943.

Grant & Wefer, of New York City (Floyd M. Grant, of New York City, of counsel), for appellant.

Mathias F. Correa, U. S. Atty., of New York City (Joseph C. Kenney, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action to recover alleged overpayments of stamp taxes paid by the plaintiff on real estate conveyances received by it during the years 1932 to 1937 inclusive. The plaintiff's business is the loaning of money on the security of bonds and mortgages covering real property occupied by home owners in the vicinity of New York City. During the years in question numerous mortgages held by the plaintiff were in default; in some instances it brought a foreclosure action, bid in the property at the foreclosure sale, and received a deed from the referee in foreclosure, while in other instances it accepted a deed from the mortgagor in lieu of foreclosure. Conceiving that the tax stamps required to be affixed to such deeds had been erroneously computed, the plaintiff filed a claim for refund and, upon its rejection by the commissioner of internal revenue, brought the present action, which was tried to the court without a jury. All of the facts were stipulated. From a judgment dismissing the complaint on the merits, the plaintiff has appealed.

The applicable statute is section 800 of the Revenue Act of 1926 and Schedule A thereof as amended. This section, 44 Stat. 99, 26 U.S.C.A. Int.Rev.Acts, page 284, provided that there shall be levied, collected and paid "for and in respect of the * * * documents, instruments, matters, and things mentioned and described in Schedule A of this title * * * the several taxes specified in such schedule." By section 725 of the Revenue Act of 1932, 47 Stat. 275, schedule A of Title VIII of the Revenue Act of 1926 was amended by adding a new subdivision, 26 U.S.C.A. Int.Rev.Acts, page 297, reading as follows:

"8. Conveyances: Deed, instrument, or writing * * * whereby any lands, tenements, or other realty sold shall be * * * conveyed to, or vested in, the purchaser * * * when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $100 and does not exceed $500, 50 cents; and for each additional $500 or fractional part thereof, 50 cents. This subdivision shall not apply to any instrument or writing given to secure a debt."

The relevant regulations are Articles 77, 78 and 112 of Treasury Regulations 71 (1932 Edition) and are printed in the margin.[1]

The plaintiff's claim falls into two distinct parts: (1) taxes on deeds in foreclosure actions, and (2) taxes on deeds taken in lieu of foreclosure. (1) In each instance where a mortgage was foreclosed, the judgment of foreclosure and sale directed the referee to pay taxes which were liens upon the property sold and the expenses of sale out of the proceeds of the sale. This was in conformity with sections 1082 and 1087 of the New York Civil Practice Act. The stamps affixed to the referees' deeds were computed upon the actual consideration paid by the plaintiff to the referees plus the amount of taxes and the costs of foreclosure paid by the plaintiff in addition thereto. Thus, in the first transaction listed in schedule A of the stipulation of facts, where $800 was paid to the referee and $283.47 was paid as "additional costs" (meaning payments to clear up tax liens or expenses of foreclosure), the consideration for the deed was computed at $1,083.47 and the tax was assessed at $1.50. It is the plaintiff's contention that only the $800 should be taken as considera-

---

[1] "Art. 77. Tax, how computed. In calculating the amount of stamps which must be affixed to a deed of conveyance, the tax is computed upon the full consideration for the transfer less all encumbrances which rest on the property before the sale and are not removed by the sale. * * *

"Art. 78. Tax on deed executed by sheriff, referee, or commissioner, how computed. The stamp tax on a deed of real property executed by a sheriff, referee, or commissioner, to a mortgagee who bids in the property at foreclosure sale to satisfy a mortgage lien, should be computed upon the amount bid for the property plus the cost, if paid by the purchaser.

"Art. 112. Conveyance by mortgager to mortgagee. A conveyance by defaulting mortgagor to mortgagee in consideration of the cancellation of mortgage debt is subject to tax calculated on the amount of the mortgage debt plus unpaid accrued interest."

tion for the deed and the tax should consequently be but $1.00. This contention was rightly rejected. As already noted the foreclosure decree required the taxes and cost of foreclosure to be paid out of the proceeds of sale. We understand this to mean that payment of these items was a condition precedent to delivery of a deed by the referee. The purchase price paid by the plaintiff as purchaser at foreclosure plainly included not only the cash paid to the referee but also the sums paid to others for taxes and court costs. Cf. Commissioner v. Coward, 3 Cir., 110 F.2d 725, 727; Helvering v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 778, 781. Such price was the "consideration" for the conveyance within the meaning of the statute. Article 78 of the Regulations has so construed it and even without that Article we should reach the same conclusion. The argument appears to be that where the bid price was more than the so-called "additional costs," as in the first transaction in schedule A above referred to, such additional costs could and should have been paid by the referee out of the purchase price. But we find nothing in the stipulated facts to support the argument. For all that appears the $800 bid may have been entirely expended by the referee for taxes and expenses of sale and still have left unpaid $283.47 for similar items which the plaintiff itself paid off in order to obtain the referee's deed. We cannot assume that the plaintiff voluntarily made unnecessary expenditures.

(2) Where a deed was taken from the mortgagor in lieu of foreclosure the tax was computed by the commissioner upon the balance of principal and accrued interest due on the mortgage, plus the usually nominal sum, if any, paid in cash by the plaintiff to the mortgagor. This method of computation the district court sustained. It is the plaintiff's contention that only the cash payment can be deemed "consideration" within the meaning of the statute.

 It appears from the stipulation of facts that in each instance the deed taken from the mortgagor in lieu of foreclosure contained a recital that the premises were "conveyed subject to" the mortgage, "it being the intention that said mortgage shall not merge in the fee but shall remain open and continue to be a lien on said premises." Consequently the lien of the mortgage was not cancelled of record at the time the deed in lieu of foreclosure was taken. In some instances the mortgage was cancelled of record when the plaintiff later resold the property and accepted a new mortgage executed by the purchaser, but in a majority of instances an agreement was entered into between the plaintiff and its purchaser modifying and amending the terms of the original mortgage, and title was conveyed subject to the lien thereof and the purchaser assumed the payment. The purpose in modifying the existing mortgages upon sale of the properties instead of executing new purchase money mortgages, was to conform the record mortgage to the terms of the contract of sale and to avoid payment by the purchaser of the expense that would be incurred in the filing of a new mortgage. Despite the facts above recited we think it clear that the conveyance in lieu of foreclosure operated to release the mortgagor from liability for the mortgage debt. That this was the intention appears from paragraphs XVIII to XXI and XXIII to XXV, inclusive, of the stipulation which the plaintiff moved to strike out as irrelevant and immaterial. These paragraphs recite that the plaintiff intended to take the property in full satisfaction of the mortgage indebtedness, and did not intend to seek any deficiency judgment against the mortgagor nor did it ever attempt to do so; that no mortgagor was ever sued on his bond and none of the mortgages was ever foreclosed; that no further interest on the mortgages was ever paid by the mortgagors nor was such interest demanded of them or accrued on the plaintiff's books; and that the total cash consideration actually paid to the mortgagor for his deed and the unpaid balance of the principal due on the mortgage were entered in the plaintiff's "Real Estate Owned" account as items of cost of the property transferred to the plaintiff by the deed. The district court rightly overruled the plaintiff's motion to strike from the stipulation the aforesaid paragraphs. Moreover, counsel for the plaintiff informed the district court that "there was a recital in the deed of conveyance that the conveyance was made in consideration of the mortgagee's agreement not to seek a deficiency judgment against the mortgagor." Such agreement was plainly "consideration," additional to any cash payment by the plaintiff, for the mortgagor's deed.

 The plaintiff argues that the value of the mortgage debt at the time

when a deed was taken in lieu of foreclosure was not ascertainable and therefore no tax could be computed thereon. This argument is rested upon sections 1083-a and 1083-b of the New York Civil Practice Act which limit the mortgagor's liability for a deficiency judgment in foreclosure, or in an action upon the mortgagor's bond, to. the difference between the amount of the mortgage indebtedness and the fair and reasonable market value of the mortgaged premises. But in accepting the deed in satisfaction of the mortgage indebtedness, the plaintiff gave up rights which were presumptively, at least, worth the amount of the mortgage debt. Whether proof that in fact they were worth less would have been permissible we need not say, for no such proof was offered. The burden of establishing that the tax was erroneously collected was upon the plaintiff.

■ Thus we think the decision on this branch of the case might be supported without regard to article 112 of the Treasury Regulations. An identical regulation has been in effect during several re-enactments of the statute.[2] This is persuasive evidence of congressional approval. McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 75 L.Ed. 1183; Jones v. Magruder, D.C.Md., 42 F.Supp. 193, 199, and cases there cited. We see no reason to doubt the validity of article 112. The tax on deeds taken in lieu of foreclosure was computed in exact conformity with the regulation.

Judgment affirmed.

L. HAND, Circuit Judge (dissenting in part).

I dissent as to the taxes paid upon those transactions in which the taxpayer took over the equity without foreclosure. In these instances the mortgagee received a deed of the equity and paid a tax based upon the cash which it paid to the mortgagor. On this record we are justified in assuming that the amount so paid was the value of the equity at the time of the transfer. The ."value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale," was therefore the cash and the plaintiff had conformed to that clause of the statute. If it was liable for more, that must be because it gave some other consideration. The theory on which it was held liable and which my brothers accept, is that the cancellation of the bond—for I agree that it came to that—must be presumed to have been a consideration measured by its face. Article 112 so declares, and arguendo I shall assume that it is valid in the ordinary case where a mortgagee may sue upon the bond, as obligee, and recover in full. I confess to some. doubt whether even so the value of the land should not be set off; but that doubt need not be laid here. For in New York the mortgagee during the period with which we are concerned, had no right to recover on the bond anything whatever beyond the difference between its face and the value of the mortgaged property at the time of foreclosure. I see no reason for construing the words, "the amount of the mortgage debt," in Article 112 as meaning more than the amount of. that part of the debt which the mortgagee, as obligee, could by any means recover. It seems to me most unreasonable to suppose that the tax was to be levied upon any part of it for the collection of which the creditor had no sanction. As I read the New York law, the effect of it is the same as though it had declared that "the mortgage debt" was paid up to the value of the land at the time of the foreclosure.

[2] See T. R. 55 (1918 Edition), Art. 104 relating to 40 Stat. 1137; T. R. 55 (1922 Edition), Art. 91 relating to 42 Stat. 305; T. R. 55 (1924 Edition), Art. 57 relating to 43 Stat. 355.